496 So.2d 1122 (1986)
Tim ALLEN
v.
TRAFFIC TRANSPORT ENGINEERING, INC., et al.
No. CA-5118.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
Rehearing Denied November 19, 1986.
*1123 Mark Alan Jolissaint, and Lionel F. Price, Slidell, for plaintiff-appellant.
Robert E. Peyton, Christovich & Kearney, New Orleans, for defendant-appellee.
Darryl J. Foster, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for intervenor Complete Auto Transit, Inc.
Before GARRISON, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Plaintiff instituted this products liability suit against defendant Traffic Transport Engineering, Inc. for injuries received when he fell from a tractor-trailer while loading vehicles. Plaintiff's employer, Complete Auto Transport, Inc. (CAT) intervened seeking to recover compensation benefits paid.
The trial was bifurcated as to liability and quantum. The trial court dismissed plaintiff's demands and this appeal followed.
Plaintiff was employed by CAT in the capacity of a truck driver. CAT was in the business of delivering new automobiles from docks to dealerships in the New Orleans area. As a driver plaintiff was required to load new cars onto the trailer, drive the trailer to the dealerships, unload the cars and then return to the docks where the process would be repeated. All of CAT's drivers, including plaintiff were paid on a per load basis.
On the date of the accident plaintiff was in the process of loading a trailer referred to as a "quick loader". It was so named because it enabled the driver to haul more loads in a day than with a conventional trailer. Because of his senority, plaintiff had been permitted to use the quick loader for several years.
The trailer had two levels upon which automobiles were loaded and tied down for delivery to the dealerships. The rear upper deck could be moved with a hydraulic pump so that an incline could be created so vehicles could be driven up and tied down.
The accident occurred shortly after plaintiff had driven the last vehicle, a van, unto the rear upper section. He exited the van, closed the door, and placed his feet on an eight inch wide metal strip, referred to as a *1124 cat-walk by the plaintiff, and a ramp step by defendant. Holding on to the drip molding of the van with his fingertips plaintiff began to side step, foot over foot, along the metal ramp hoping to descend to the bottom level. The angle of incline of the ramp step in the loading or unloading position is between 11 and 16 degrees. Plaintiff, in attempting to walk down the incline along the metal ramp lost his balance and fell.
Plaintiff alleges that the trailer was defectively designed in that it failed to provide a safe means of egress for a driver attempting to descend the upper rear of the trailer. Defendant contends that there was a safe method of descent recommended by the manufacturer and utilized by plaintiff's employer as company policy, and that plaintiff chose not to utilize that method, instead relying on an admittedly dangerous technique.
In Horne v. Liberty Furniture Co., 452 So.2d 204, (La.App. 5th Cir.1984) our brethren of the Fifth Circuit succintly summarized the law of products liability in Louisiana as follows:
"A manufacturer of a product may be held liable for injuries caused by its product without a showing of knowledge or negligence if the plaintiff establishes (1) there was a defect in the design or manufacture of the product, (2) the product was in normal use, (3) the defect created an unreasonable risk, and (4) the plaintiff's injury was caused by the defective product.... Once the plaintiff has established the elements of a products liability claim, only a showing by defendant of the assumption of the risk by the plaintiff will bar a recovery." (citations omitted) Id. at 208.

The following facts were adduced at trial. It is clear that plaintiff's employer, CAT, did not recommend the method used by plaintiff. Plaintiff admitted that he was fearful of using that method, but used it anyway, as did the other drivers because it was quicker. Plaintiff's employer and defendant both agree that the proper method of egress was the "step down" method utilizing a three point hold. That is, the driver should maintain at least one hand and both feet, or one foot and both hands in stable contact with the trailer at all times, and descend in a vertical direction down the cross members of the trailer. However, plaintiff and at least two other drivers, Charles Specht and Rochne Malochowskis testified they were never taught this. CAT's representative, Don Wright, contradicted this testimony.
In support of plaintiff's allegations, Robert Jac Cooper, a mechanical engineer, testified that in his opinion the trailer provided three possible means of descent, each of which was defective. The first method is the "step down" procedure described above. He criticized this method because the first step was approximately 32 inches to the cross-member of the frame, considerably more than as described by defendant's experts. The second method required a driver to exit the van and walk by the "catwalk or step ramp" towards the front of the trailer until a down ladder could be reached. This method was also criticized because it required a driver to climb higher without any hand holds in order to reach the ladder. The third method was described as the "down the ramp" method, which was the one utilized by the plaintiff. Although in Mr. Cooper's opinion this was the safest of the three, it still presented dangers in that the "catwalk" was only 8 inches wide, was not equipped with a non-skid surface and lacked sufficient hand holds thus requiring the driver to hold the drip molding of the vehicle for balance.
In support of defendant's position, Mr. George Liebkemann, a mechanical engineer, testified that with the van driven to its proper position on the trailer and with the degree of incline on the ramp properly positioned, the first step off the ramp to a cross-member of the trailer would only be 11 to 15 inches. This would permit the driver to climb straight down to the ground, as recommended by the manufacturer. Liebkemann also concluded that it would not be forseeable that a driver would position the ramp at its maximum incline in loading vehicles since such a position may *1125 damage the underside and prevent proper tie down. He was of the opinion that attempting to slide down the ramp step while holding the drip molding would not satisfy the three point hold as a driver would not be able to support his weight using the drip mold.
Dr. Miller, defendant's other expert, qualified as a mechanical engineer and safety expert. He testified that the ramp step is a step, not a walkway, to exit the van in a vertical manner. He also concluded, as did Liebkemann, that a driver can position a van on the rear upper deck so as to allow a maximum 12 to 15" first step in a vertical descent. He stated that the three point method of descent, recognized by the Society of Automotive Engineers, the Military and others as the safe method of descent, can be easily satisfied in this manner. His opinion concludes as follows:
"Based on the van that I studied and the trailer that I studied, a safe three-point egress method could have been used to get out of the van to the ground."
The testimony of the fact witnesses Rochne Malochowskis, Charles Specht and John Zell, co-employee drivers, can be summarized by the conclusion that the drivers frequently used the same manner of egress as the plaintiff. Specht and Malochowskis, called by the plaintiff, testified that they considered the step down method, recommended by the defendant and its experts, as dangerous as the other methods because of the first step. John Zell called by defendant, testified he was taught to descend in a straight down or vertical manner, and that the ramp step was a place to step out and not a ramp to walk on.
Based on the above testimony and the various photographs and exhibits in evidence, we cannot say that the trial judge was manifestly erroneous in his conclusion that the trailer was not defective in design. There is ample evidence to support this conclusion, and it is apparent the trial court accepted the opinions of the defendant's experts that the trailer was safe. We find no clear error in this regard.
We further find that the method plaintiff used in descending the trailer would not be reasonably foreseeable by the manufacturer for several reasons. First, as Liebkemann testified, the three point hold would not be satisfied by the tips of the fingers holding onto the drip rail of the van. Second the catwalk or ramp step does not extend the full length of the rear upper deck, thus no matter what the position of the incline, when a driver reached the end of the ramp step he still would have to jump a distance to the ground. It is apparent that the design of the ramp step was not intended as a means for the driver to reach the ground. We cannot hold a manufacturer to a duty to forsee every possible method that a driver may utilize in descending the trailer, only those that it could reasonably foresee.
Lastly, even assuming that the manufacturer should have forseen someone would use the ramp step to descend the trailer, the plaintiff in this case assumed the risk. He testified that he was aware of the potential danger, but continued to use the method which ultimately caused his fall. That assumption of the risk would bar any claim he may have against the defendant in the use of that method.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
GARRISON, J., dissents with reasons.
GARRISON, Judge, dissenting:
I dissent. In my judgment it was foreseeable that, sooner or later, someone dismounting from the tractor-trailer would fall. In the state of design of the tractor-trailer at the time the optional methods of departure, including the recommended one, all were unsafe.