LOBRANO, Judge.
The issue in this appeal is whether the patio steps at the Audubon Park Zoological Beer Garden are defective in their design because of the absence of a handrail. Plaintiffs, Southeastern Fidelity Insurance Company and their insured, the Audubon Park Commission, are the assignees of Miss Diane McShea (McShea) by virtue of their settlement with her in a claim filed against them because of injuries received by McShea. Defendants are Cashio, Cochran & Associates, (Cochran) the designers of the stairs and their insurer, St. Paul Fire and Marine Insurance Co.
The trial court held that the stairs were not defective, and dismissed plaintiffs’ suit. This appeal followed.
The pertinent facts are as follows.
On September 20, 1981, Miss Diane McShea was visiting the Audubon Park and Zoological Gardens in New Orleans with her young son, Adam. As Miss McShea and son were walking in the area known as the “beer garden and concession terrace”, they began to descend a set of steps immediately adjacent to a concession stand. The set of steps consisted of five steps descending from a walkway area down into a recessed area commonly referred to as the beer garden and concession terrace. At that time, there was no handrail available for use by patrons of the park while descending or ascending the steps.
As Miss McShea attempted to descend the steps, she fell all the way from the top stairs to the bottom, and sustained a broken heel bone in her left foot. In her deposition she recalls being at the top of the stairs, all of a sudden falling, and then *142 being at the bottom of the stairs. She seems to recall having stepped down at least to the first step, but was not really sure if she was at the top or on that first step. She recalled having been walking at the time she fell, but does not recall the actual reason for the fall. Miss McShea specifically recalled that there was nothing such as a handrail in or around the steps that she could grab or grasp hold of in order to break her fall.
Plaintiffs, as McShea’s assignees, assert a cause of action for strict liability as a result of design defect, and for negligence on the part of the designers. Under either theory plaintiffs’ claim will fall absent proof of a defect.
Under a strict liability theory plaintiffs must show that there was a defect in design which created an unreasonable risk of harm during normal use, and that the defect was the cause of McShea’s injuries. See, Allen v. Traffic Transport Engineering, Inc., 496 So.2d 1122 (La.App. 4th Cir.1986), writs applied for. A defect is a flaw or fault which creates an unreasonable risk of harm to others. What constitutes an unreasonable risk of harm has been the subject of much discussion since the Louisiana Supreme Court decision in Entrevia v. Hood, 427 So.2d 1146 (La.1983). The often quoted language of that decision provides the following criterion:
“The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court, to symbolize the judicial process required by the civil code.” Id. at 1149.
The Entrevia court noted that there must be a weighing of moral, social and economic values and the ideal of justice. Each determination must be made with respect to its own special facts and circumstances.
The trial court had before it the opinions of four experts. Their testimony is summarized as follows:
Plaintiffs’ only expert was Wiley Poole, a retired professor of engineering at LSU with no experience in site work improvement for public and/or park works. He testified that the lack of handrails made the stairs defective according to the codes and standards he thought were applicable, namely the American National Standards Institute (ANSI), OSHA, and the USAS Standard Building Code.
On cross-examination, Mr. Poole acknowledged that the section that he referred to from the OSHA standards was entitled “Industrial Settings”. He also acknowledged that the purpose of the Life Safety Code was directed to the need to counter the effect of fire upon the occupants of a structure, the need for occupants to find safety, and the need to provide the structural elements that will insure a route to safety as provided for in the Life Safety Code. Mr. Poole also acknowledged that the USAS Standards refer to “requirements for fixed industrial stairs”.
In sum, Mr. Poole’s opinion was that all stairs should have handrails and that they can only add to safety by preventing a person from falling or catching a person should they be falling.
Defendants presented three experts. Mr. Murvan M. Maxwell, co-author of the current city building code, qualified as an expert in architecture and safety. He testified that the series of steps in question come within the field of landscape arrangement and design. They should be considered within the purview of the standards followed in landscape design and construction. It is the accepted practice in this area that stairs and steps may follow all kinds of patterns with safety in mind. He noted that the city building code is silent as to stairs found in parks.
He stated that the design of the steps in question fall in the norm of the basic precepts of practice in landscape architecture, that they have wide and comfortable treads, (fourteen inches), low rising steps with less than a six inch rise, and are constructed of concrete with a rough broom finish. This construction allows good traction all the way to the end of the steps and are slip resistant.
*143 Mr. Cochran and Mr. Weed essentially reiterated the findings and conclusion reached by Mr. Maxwell.
It is obvious that the trial court gave great weight to defendants’ experts. The weight given to an expert’s testimony is determined by his qualifications, experience in the field and facts upon which his opinion is based. “The trial judge has considerable discretion, which should not be disturbed absent manifest error, in accepting or rejecting such testimony.” Orgeron v. Dobkowski, 476 So.2d 458 (La.App. 1st Cir.1985) at 460. Considering the testimony of the experts, we cannot say the trial judge erred in determining that the lack of a handrail on the steps in question created an unreasonable risk of harm under the circumstances of this case. We are satisfied that, when applying the criteria of Entre-via, supra, the trial court’s conclusion was correct. We will not substitute our appreciation of the expert’s testimony for that of the trial judge absent clear error.
Absence proof of a defect, any claim under a “negligence theory” must also fall.
For the above and foregoing reasons, the lower court judgment is affirmed.
AFFIRMED.