459 So.2d 1260 (1984)
Steven Wayne HARPER
v.
The LIGGETT GROUP, INC., et al.
No. CA 83/1205.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Writ Denied January 14, 1985.
Phil Breaux, St. Gabriel, for plaintiff-appellee, Steven W. Harper.
Erwin Larose, Baton Rouge, for defendant-appellee, Walter Aertker, Jr.
L. Michael Cooper, Baton Rouge, for defendant-appellee, Colgate-Palmolive Co.
Leonard Young, New Orleans, for defendant-appellee, Harbor Ins. Co.
Francis G. Weller, New Orleans, for defendant-appellant, Diversified Prod., et al *1261 and defendants-appellees, Liggett Group, et al.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON,[*] JJ.
GROVER L. COVINGTON, Chief Judge.
This is a products liability case. On January 5, 1981, Dr. Steven Wayne Harper, the plaintiff, was playing racquetball with Walter Wright Aertker, Jr., one of the defendants, when Aertker's racquet separated from the butt cap on the end of the handle, flew out of his hand and hit Dr. Harper in the left eye, causing a serious injury and leaving him legally blind in that eye.
Harper filed suit against Walter Wright Aertker, Jr.,[1] Liggett Group, Inc. (Liggett), K-Mart Corporation, Transportation Insurance Company (Transportation), Colgate-Palmolive Company (Colgate), Diversified Products Corporation of Delaware (Diversified of Delaware), Diversified Products Corporation of California (Diversified of California), Leach Industries, Inc. (Leach), Liggett Sporting Goods, Inc., Harbor Insurance Company, Northbrook Excess & Surplus Insurance Company, and Old Republic Insurance Company. Liggett filed a third party demand against Aertker and Colgate. K-Mart filed a third party demand against Liggett and Transportation. Transportation third partied Aertker, Colgate and Kun-Nan Enterprises, Ltd. (Kun-Nan). Leach, Diversified of Delaware, Diversified of California and Liggett Sporting Goods, Inc. third partied Aertker and Colgate. Colgate third partied Aertker and Kun-Nan. The trial court rendered judgment in favor of the plaintiff against Diversified of Delaware and its insurer, Transportation Insurance Company, and against Aertker, in the sum of $924,300.75. The court also dismissed all of the third party demands, except for that of Diversified of Delaware and Transportation for contribution against Aertker and for indemnity against Kun-Nan[2]. Only Diversified of Delaware and Transportation have appealed; Harper answered the appeal seeking an increase in the amount of damages awarded.
The appellants, Diversified of Delaware and Transportation, raise three issues on appeal. First, the trial court erred in denying appellants' third party claim against Colgate for indemnity under the provisions of the purchase agreement. Second, appellants argue that the trial court's award is excessive because Dr. Harper can, if he desires, continue his dental practice and, thus, not lose any future income. Third, the trial court erred in basing its award on pre-tax income, rather than net income. The liability of defendants is conceded.
The facts giving rise to this suit are that in October of 1980, Aertker purchased a Leach Topseed racquetball racquet at a Baton Rouge K-Mart store. The racquet in question was designed and manufactured in Taiwan by Kun-Nan. Leach imported the racquet, placed its Leach Topseed label on it and sold it to K-Mart, the sole distributor of the Leach Topseed racquetball racquet. Prior to March 5, 1980, Leach was a subsidiary of Colgate-Palmolive Company. On that date, Colgate sold all of the stock in Leach to the Liggett Group. By the terms of the purchase agreement, Colgate agreed to indemnify Liggett and its successors against any loss, expense or other damages arising out of any claim brought or asserted by a third party against Liggett or Leach arising out of or in connection with the conduct of the business of Leach before the March sale and asserted within four years of the date of the sale. Liggett subsequently became Diversified of Delaware. The trial court, as stated, denied Diversified of Delaware's claim for indemnity against Colgate. The court based its *1262 decision on the grounds that, because the indemnity agreement did not specifically agree to indemnify Leach and/or Liggett against the consequences of their own negligence, Diversified of Delaware, as Liggett's successor, was not entitled to indemnification. The court made no finding on the question of when the racquet was placed in the stream of commerce in order to apply the time limitation of the purchase agreement.
The pertinent provision reads as follows:
6.02 Indemnification.

(a) Seller shall indemnify, defend and save harmless Buyer and Leach, as the case may be, against any loss, expense (including reasonable cost of investigation and legal fees) or other damage caused by or arising out of any action or claim brought or asserted by third parties not affiliated to Buyer against Buyer or Leach, as the case may be, arising out of or in connection with the conduct of the business of Leach prior to the Closing Date provided, however, Seller shall not be liable to so indemnify Buyer with respect to any such actions or claims brought or asserted after four years from the Closing Date.
The trial court held that this provision, lacking a specific reference to indemnity for the consequences of the indemnitee's own negligence, must be strictly construed as denying indemnification for such acts. On appeal, it is argued that the racquet in question was manufactured prior to the closing date, and that Diversified of Delaware's liability to the plaintiff is based on strict liability, not negligence, and, thus, not subject to the jurisprudential exclusion based on the indemnitee's own negligence.
Before deciding the question of the applicability of this provision to the manufacturer's or Leach's negligence, we must consider the question of when the "conduct of business" occurred. The testimony of three witnesses: the manager of the K-Mart store, an officer of Leach and Diversified of Delaware and the sporting goods buyer for all K-Mart stores shows that it is uncertain when the racquet in question was manufactured, when it was received by Leach (predecessor of Diversified of Delaware), and when it was received by K-Mart. As stated, this racquet was manufactured in Taiwan by Kun-Nan, shipped to Leach in California and ultimately to K-Mart, where it was purchased by Aertker. The times of each transaction or movement in the stream of commerce are not established by the record.
Kun-Nan had been requested to make changes in the design and construction of the butt end cap and wrist thong of the racquet in late 1979, but was still shipping "unchanged" racquets as late as May 1980. Although Diversified of Delaware attempted to show that racquets with wrist thongs like Aertker's racquets were not ordered after January of 1980, it was unable to prove that Kun-Nan had ceased manufacturing or shipping such racquets. In fact, the preponderance of the evidence indicates that the Aertker racquet was received by Leach and shipped to K-Mart after March 5, 1980, the date of sale from Colgate to Liggett (Diversified of Delaware).
In order for the third party plaintiffs, Diversified of Delaware and Transportation, to prevail in their claim against Colgate, they would have had to prove that this racquet formed part of the business conducted by Leach prior to March 5, 1980. Since we find that the evidence fails to prove this fact, third party plaintiffs have not borne their burden of proof. Hue v. Blanchard, 337 So.2d 1218 (La.App. 1st Cir.1976). In the instant case the proponents' witnesses either could not say when the racquet entered the stream of commerce to Leach, or testified to facts indicating that it entered the stream of commerce after the cut-off date for Colgate's liability. Under these circumstances we find that Diversified of Delaware failed to carry its burden of proof. Consequently, the rejection of the third party demands of Diversified of Delaware and Transportation against Colgate are affirmed.
The second issue raised on this appeal concerns the quantum awarded by the trial *1263 court. At the time of the accident, Dr. Harper was a 27-year old dentist who had been in practice for approximately two and one half years. After the accident, he tried to resume his dental practice but has been unable to perform satisfactorily as a dentist. Harper testified that he tried to overcome his disability and accommodate his handicap, but without success. The testimony of Dr. Clinton Pettigrew, a psychologist, established that Harper's loss of self-confidence in performing the procedures required in dentistry caused his depression and fear of inadequacy in his profession.
There is no disagreement among the plaintiff's and the defendants' expert physicians concerning the extent of Dr. Harper's injury. The force of the blow caused a tear in the retina in his left eye which will never heal. Thus, Dr. Harper has a hole in his vision in the left eye, with no central vision in that eye. He retains some peripheral vision in the left eye, but is considered legally blind in that eye. The result of the loss of vision in one eye is the loss of depth perception at close range.
Based on Harper's past earnings, as analyzed by Dr. Ronald R. House, Ph.D., Economics, and former chief economist for the American Dental Association, the trial court awarded $822,986.00 as lost future earnings. We agree with this finding.
Additionally, appellants urge this court to overrule the jurisprudential rule that gross income, rather than net income, should be used to compute the loss of future earnings. For the reasons set forth in Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974), writ denied 305 So.2d 123 (La.1974), and its progeny, we will continue to use pre-tax earnings to calculate loss of future earnings. A review of the testimony and documentary evidence convinces us that there has been no manifest error committed by the trial court in this award; and consequently, we affirm its judgment. Copeland v. Louisiana Department of Transportation and Development, 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied 435 So.2d 448 (La.1983). Likewise, we find the award of $100,000.00 as general damages well within the sound discretion of the trial judge. Batiste v. Iberia Parish School Board, 401 So.2d 1224 (La.App. 3rd Cir.1981), writ denied 405 So.2d 531 (La. 1981). The amount of special damages is established by the record.
For the reasons assigned, the trial court's judgment is affirmed. Costs to be paid by defendants-appellants.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this Court pro tempore.
[1] Defendant, Walter Wright Aertker, Jr., has not appealed the judgment rendered against him.
[2] Kun-Nan Enterprises, Ltd. has not appealed the judgment rendered against it.