GARRISON, Judge.
This is an appeal from a judgment of the district court dated February 8, 1983 rendered as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Charlene Alexander and against the City of New Orleans in the following amounts:
General Damages $35,000.00
Lost Income $15,000.00
for a total of fifty thousand ($50,000.00) dollars together with judicial interest from the date of demand until paid and all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Charlene Alexander wife of and Sidney Alexander and against The City of New Orleans for medical expenses in the sum of six hundred twenty dollars and 75/ioo ($620.75) together with judicial interest from the date of demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that American Motorist Insurance Company, John Copley and Melanie Verges be, and they are hereby dismissed as defendants herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the third party petition of the City of New Orleans against American Motorist Insurance Company, John Copley and Melanie Verges be, and the same is hereby dismissed.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fees of the expert witnesses be fixed as .setout hereinbelow and taxed as costs;
Dr. Patricia Cook $200.00
Dr. John E. McLachlan $200.00
Dr. C.R. Robinson $150.00
Mr. Gregory Verges $400.00
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to the stipulation of all parties to the Petition of Intervention herein, forty percent (40%) of the gross amount collected hereunder, plus the sum of five hundred ($500.00) shall be placed in the Registry of Civil District Court for the Parish of Orleans, State of Louisiana pending resolution of the claim of intervenor.”
Melanie Verges settled with the City and John Copley and that settlement has not been appealed. Additionally, plaintiff’s reputed prior attorney has intervened to protect his fee. The intervention, as is apparent from the portion of the judgment deal *883 ing therewith, has not been decided and is not amenable to appeal.[1] From that judgment, defendant, the City of New Orleans, appeals.
On July 4, 1979, John E. Copley, an employee of the New Orleans Fire Department, was driving a fire engine in response to a 211 call at Touro Hospital. The engine was headed in an “uptown” direction on St. Charles Avenue when it was involved in an accident at the intersection of Julia and St. Charles with a vehicle driven by Melanie Verges. The driver and her sister, Charlene Alexander, were returning from Morton’s Auction Exchange when the accident occurred. They were traveling in a lake-bound direction on Julia Street.
On appeal the City argues that the trial court erred in:
1. failing to find Melanie Verges the cause of the accident and,
2. abusing its discretion in awarding plaintiff $35,000.00 in general damages and $15,000.00 for lost income.
Turning to the first specification of error, it appears to be a credibility call issue. Melanie Verges and John Copley both testified that they each had the green light. Alexander, the guest passenger, testified that she does not know what happened.[2] Donald Ricks and Clifton Holmes were both riding on the fire engine and were both facing the rear of the vehicle. Both firemen testified that they did not see the light facing in their direction prior to the collision. Joseph Kief was seated on the passenger side of the vehicle and was facing forward. At the time of the accident, however, Mr. Kief was bent over, adjusting his boots. Mr. Kief testified that after the collision, he checked the light and found that it was green, but he did not see the light prior to the collision.
Even if the trial judge had found Melanie Verges negligent, it is apparent that Mr. Copley had the last clear chance to avoid the accident and failed to do so:
Q. You didn’t try to swerve?
A. No, sir.
Q. Did both of the passengers in the Datsun appear to be injured or just Mrs. Alexander?
A. Mrs. Alexander.
Q. Did you not brake when you first saw the Datsun, did you?
A. No, I didn’t brake, no.
Q. If you hadn’t put your brakes on at that time you wouldn’t have hit her, would you?
A. I didn’t have reason to put my brakes on at that time.
Q. That’s not my question. If you put it on at that time you could have stopped, couldn’t you?
A. I could have, yes.
(Tr. p. 103-104) (emphasis added).
Mr. Copley also testified that he had one foot on the brakes and one hand on the airhorn and that he consciously decided to blow the horn and not apply the brakes. It is apparent that there is no manifest error. Accordingly, this specification of error is without merit.
Turning to appellant’s second specification of error, plaintiff was knocked unconscious for a period of time, numerous slivers of glass were imbedded in her face and other parts of her body, both eyes were black and blue and her. right eye immediately swelled shut. Both eyes were swollen shut for at least 10 days. She suffered a two inch cut running from the hairline into the scalp. Her eyebrow, lower right lip, lower left leg and elbow were cut. The entire right side of her body was cut and bruised, with especially bad bruises in the rib and chest area, right hip and elbow. Mrs. Alexander suffered a concussion and thus was ineligible for any medication for pain. The day after the accident, Mrs. Alexander returned to the emergency room to have a loose steristrip reapplied.
Mrs. Alexander suffers from post-concussion syndrome. The concussion results in vascular changes in the brain, specifical *884 ly constricted blood vessels, which causes severe headaches. Mrs. Alexander suffered a continuous severe headache for the first six months after the accident. She is still being treated by a neurologist, Dr. P. Cook, for the headaches. Dr. Cook testified that the headaches will continue through menopause. Additionally, the medication prescribed for the headaches causes side effects including nausea.
Mrs. Alexander suffered with severe rib pain for a period of six to nine months after the accident. During this period, she was unable to get a good night’s sleep. Dr. John McLachlan, an orthopedic specialist testified that plaintiff has chronic costo-condylus. Although the pain is better now, this condition prevents plaintiff from resuming her normal activities including golf, tennis, lifting grocery bags, and most housework. Dr. McLachlan also testified that both sleeping on the right side and deep breathing can cause pain. Upon Dr. McLachlan’s recommendation, the Alexanders hired a maid. Mrs. Alexander continues to have rib pains and cannot do all of her housework. Due to this pain and for a period of one year after the accident, Mr. and Mrs. Alexander were unable to engage in sexual relations. The quality of their sex life has never been restored to that which it was prior to the accident. Lastly Mrs. Alexander continues to suffer from a fear of riding in automobiles and still has nightmares about the accident. Thirty-five thousand dollars is not a clear abuse of discretion. Accordingly, the judgment is affirmed on this point.
Turning to the loss of income argument, Mr. and Mrs. Alexander ran a real estate business. Mrs. Alexander was the manager and handled the “business end of business” while Mr. Alexander did the outside sales. Mrs. Alexander also recruited and trained all of the agents and handled all personnel problems. During the first six months after the accident, Mr. Alexander testified that he had to care for his wife including driving her everywhere, helping her in and out of bed, and helping her to the bathroom, such that the time he devoted to his regular business duties was significantly diminished and a loss of income resulted. In addition, Mr. Alexander, who was unfamiliar with the “business end of the business” was required to fill in as general manager. Mr. Alexander did not have the rapport with the employees that Mrs. Alexander had, all of which resulted in a mass defection of company employees.
The employees who defected from Keas-ler-Alexander in February/March 1980 had earned for the firm:
$94,955.19 in 1978
$229,834.40 in 1979
$37,170.95 (First 2-3 months) in 1980
The top six producers on the list of agents who left were all members of the Million Dollar Club and earned for the firm $182,000.00 in 1979. After leaving the firm in 1980, those agents sold enough real estate for their new employers that they sustained membership in the Million Dollar Club.
Likewise the firm’s retained earnings dropped from $36,403.00 in May, 1979 to $29,410.00 in May, 1980 to a negative $9,932.00 in May of 1981.
Mrs. Alexander earned personal commissions of $20,487.00 in 1978 and $32,150.00 in 1979 in addition to her company salary of $13,650.00. In 1980 she earned no personal commissions and her company salary was only $4,100.00.
The trial judge awarded $15,000.00 to Mrs. Alexander for her lost wages. He made no award to the corporation or to Mr. Alexander. The amount awarded is somewhat on the low end, but clearly is not an abuse of discretion under Reck v. Stevens, 373 So.2d 498 (La., 1979).
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.

. C.C. Art. 3556(31).

. Mrs. Alexander still suffers from amnesia. Testimony of Dr. P. Cook, Tr. p. 66.