501 So.2d 994 (1987)
D. Gregg WHITACRE, Plaintiff-Appellee,
v.
HALO OPTICAL PRODUCTS, INCORPORATED and Optical Dispensary, Defendants-Appellants.
No. 18340-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*996 Joseph W. Greenwald, Shreveport, for plaintiff-appellee.
*997 Mayer, Smith & Roberts by Ben Marshall, Jr., Shreveport, for defendant-appellant Halo Optical Products, Inc.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is an appeal of a judgment awarding damages for personal injury in a product liability suit. The plaintiff-appellee is D. Gregg Whitacre. The defendant-appellant is the Halo Optical Products, Inc., manufacturer of "Rec Specs," a lensless plastic goggle used for eye protection during sporting activity.
We reverse that part of the judgment finding the plaintiff guilty of comparative fault and reducing his damage award by 33 1/3%. The judgment is affirmed as amended.

FACTS
On June 2, 1983, the 41 year old plaintiff sustained an injury to his left eye during a game of racquetball when his opponent returned a serve and the ball struck the plaintiff in the left eye causing him to collapse and fall to the floor. At the time of the injury the plaintiff was wearing the lensless protective goggle manufactured by the defendant and had just completely pivoted his body to observe his opponent's actions. A portion of the racquetball penetrated the opening in the goggle compressing the eye. The plaintiff alleged the goggles were defectively designed. He sought damages for medical expenses, pain, suffering, disability and loss of income.
At the time the plaintiff purchased the goggles in August of 1982, he and the salesperson examined the literature in the goggle box which stated the Rec Specs were "the ultimate in sports eyewear" which was a representation that these goggles would provide the best eye protection while playing racquetball. Although plaintiff noticed there were grooves in the eyelet openings of the goggles he was unaware they were designed in this way for the insertion of shatterproof plastic lens and plaintiff assumed the grooves there were for the placement of prescription lens. He did not then wear glasses and neither the product's container nor accompanying literature suggested the use of shatterproof lens in the normal use of the product. Plaintiff physically measured the perimeter of the eyelet openings against a racquetball to ensure the goggles would protect his eyes from being struck by a racquetball. At the time of the accident plaintiff had been playing racquetball for approximately one year. He was a Grade A- or B+ player on a scale of A-E. His opponent was a good Grade B+ player. He had known of other players who did use lens in such goggles but they were prescription eyewear. He had never heard of a racquetball penetrating a goggle eyelet opening and related it was common for a player to be struck in the face.
The plaintiff concluded by relating that as a result of the accident his left pupil is permanently larger than his right, causing problems with glare which he did not have prior to the date of the accident.
Dr. Thomas Moss was accepted as an expert in the field of physics. He conducted tests on the effect of a racquetball directly from the serve off of a racquet striking a lensless plastic goggle, similar to the goggles worn by plaintiff at the time of the accident. He related that a novice player can serve a racquetball at 70 mph and that an experienced player can do so at 127 mph. His investigation showed the hollow racquetball enlongates in flight narrowing its static-state physical dimensions. As a result of the energy imparted from the serve and the smaller dimensions of the racquetball, a portion of the projectile will continue into the goggle opening even though the remainder is inhibited by the plastic frame. The test revealed that such a portion of a racquetball would have penetrated the eyelet opening and come in contact with the plaintiff's eye as a result of a perpendicular strike at 45 mph. He also estimated that at a 45° angle the racquetball would require a velocity of 75 mph *998 to make such contact and at a 60° angle the speed of the racquetball would have to be at least 90 mph to penetrate the eyelet opening.
Dr. Rudolph Troup, Jr. was accepted by the court as an expert in the field of optometry. He examined the plaintiff immediately after the accident. This examination revealed an injury to the cornea and a condition referred to as hyphema (blood in the anterior chamber inside the eye). Dr. Troup immediately referred plaintiff to Dr. Kirchner, an ophthalomologist. Dr. Troup did not examine the plaintiff again until December 8, 1983, at which time he observed plaintiff's left pupil was 25%-30% larger than his right pupil. Dr. Troup stated the accident caused the pupil disorder and found the plaintiff had a 20% chance of developing future complications in the injured eye. He offered his opinion that no such severe damage would have occurred if shatterproof lens had been used. Dr. Troup, who was a racquetball player, expressed the opinion that a lay person would not have known just from the grooves in the goggles that shatterproof lens were required for full protection and that it was not uncommon for a player to be struck in the face during a game and only a "little uncommon" to be struck in the eye.
Dr. F. Randall Kirchner found plaintiff was suffering from traumatic hyphema and admitted him to the hospital for four days. The plaintiff upon discharge from the hospital was required to remain in his home reclined at a 45° angle in bed for ten days. Dr. Kirchner examined plaintiff on June 9, 1983, and observed blood in the left eye. He again examined the plaintiff on July 12, 1983, and found no blood and first noticed that the left pupil was larger than the right pupil. Dr. Kirchner described this pupil condition as permanent and probably the result of the injury but found that no other permanent disability to the plaintiff's vision would occur. Dr. Kirchner discharged the plaintiff on August 12, 1983. The witness concluded by giving his opinion that there was only a 1%-5% probability that a cataract could develop in the left eye in the future as a result of the injury.
Plaintiff was an insurance salesman and had been so employed for thirteen years. He asserted the accident caused him to miss work for approximately ninety days and this equated to a $15,200.00 loss of past income. He arrived at this determination based upon his yearly income for the following years:

1982 $62,435.00
1983 $78,242.00
1984 $74,678.00
1985 $65,575.00 (projected)

His estimated income loss was calculated by using the 1983 figure as a base and adding the difference between 1983 and 1984 income to the difference between 1983 and 1985 income. The result of this calculation is $16,275.00 which is not too far above plaintiff's $15,200.00 estimate of loss of income. This method was employed under the theory that any particular present level of insurance earnings is based upon work performed one or more years earlier. Plaintiff also asserted his particular business endeavors were concentrated in the education market and that overall economic fluctuations would not be a factor in calculating his lost income. No evidence was offered to prove this assertion. Plaintiff did admit that competition was a variable that affects his income but offered no evidence as to its effect for the period he was unable to work. He testified he was paid on a straight commission basis.
The trial court in written reason for judgment held the goggles were defectively designed because they could be penetrated by a racquetball and no proper warning was given of this fact to the plaintiff and under these circumstances the defective goggles created an unreasonable risk of harm. The court determined plaintiff had contributed to his injury by turning his body toward the opponent and placing his face in a position in the path of the racquetball as it left the opponent's racquet. The court found plaintiff sustained the following damages:

1. Medical expenses $ 1,680.80
2. Mental anguish, pain and suffering
 $12,000.00

*999
3. Physical disability $ 8,000.00
4. Lost wages & curtailed productivity
 $15,000.00
 __________
TOTAL .......................... $36,680.80

The damages were reduced by 33 1/3%, because of plaintiff's comparative fault and a judgment was rendered awarding plaintiff the sum of $24,453.30 with legal interest from judicial demand and for all costs including $175.00 for each of the three expert witnesses.
The defendant has appealed and the plaintiff has answered the appeal.
The defendant's assignments of error present the following issues for decision:
(1) The trial court was in error in deciding that the product manufactured by the defendant was defective.
(2) The trial court was in error in not deciding that the plaintiff was guilty of victim fault and/or contributory negligence which should have barred his recovery completely.
(3) The trial court was in error in its award for mental anguish, pain and suffering and physical disability resulting from injury.
(4) The trial court was in error in its award for past lost wages and curtailed productivity.
The plaintiff complains the trial judge erred in finding him guilty of comparative negligence.
1. Was the trial court in error in ruling that the product was defectively designed?

LAW ON THE FAILURE TO ADEQUATELY WARN AS A DESIGN DEFECT IN PRODUCT LIABILITY CASES
To recover in a product liability case the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use and that the condition existed at the time the product left the manufacturer's control. A product may be deemed unreasonably dangerous to normal use if the manufacturer fails to adequately warn about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. Normal use is intended forseeable use and may include reasonable forseeable misuse, something broader than operation exactly in accordance with the manufacturer's instructions. In performing this duty a manufacturer is held to the knowledge and skill of an expert. It must keep abreast of scientific knowledge, discoveries and advances and is presumed to know what is imparted thereby. A manufacturer also has a duty to test and inspect its product, and the extent of research and experiment must be commensurate with the dangers involved. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 1986); Bloxom v. Bloxom, 494 So.2d 1297 (La.App. 2d Cir.1986); Brumley v. Firestone Tire & Rubber Co., 459 So.2d 572 (La.App. 3d Cir.1984), writ den., 462 So.2d 1267 (La.1985).
If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the manner in its manufacturing or processing, for the manufacturer is presumed to know the vices in the things he makes whether or not he has actual knowledge of them. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971).
There is no duty on the part of a manufacturer to make a product that is foolproof and no duty to warn where the danger and manner of avoiding the danger is common knowledge and is known by the injured party. Tri-State, etc. v. Fid. & Cas. Ins., etc., 364 So.2d 657 (La.App. 2d Cir.1978), writ den., 365 So.2d 248 (La. 1978).
Did the lack of a warning render the goggles defective and the cause of the injury?
The trial court found that under normal use in a racquetball game the eyelet opening *1000 of the goggles was large enough to allow a racquetball to penetrate to the eye and that the lack of any warning as to this inherent condition rendered the product unreasonably dangerous and the cause of the injury.
The defendant argues that: (1) the plaintiff's act of turning to directly observe his opponent's return serve while wearing the lensless goggles is not within the normal use of the product and that; (2) there is no duty to warn of an injury that is not reasonably foreseeable. The defendant does not maintain that protection during a racquetball game was not an intended use of its product.
We conclude that the trial court was correct in ruling that the product was defective. It is evident that the defendant is held to the standard of an expert and should have known of the decreased effectiveness of its product due to the changes in the physical configuration of a racquetball resulting from the force of an opponent's serve. Halphen v. Johns-Manville Sales Corp., supra. There is no evidence that the plaintiff actually knew that the product, promoted as the ultimate in sports eyewear, would not give full protection to the eyes from an opponent's direct serve. There is also no evidence that the plaintiff should have known of the limitations as to the effectiveness of the goggles. The unrebutted testimony of the plaintiff and Dr. Troup reveals that strikes to the head and eyes are reasonably foreseeable aspects of this particular sport. See also, Harper v. Liggett Group, Inc., 459 So.2d 1260 (La. App. 1st Cir.1984), writ den., 462 So.2d 655 (La.1985). The unrebutted testimony of the plaintiff shows that his conduct, in directly observing his opponent, was a normal manner of play. The design of this product is made unreasonably dangerous due to the lack of any warning that full eye protection, while participating in racquetball, is dependent upon the use of protective lens. The record is clear that the plaintiff acted as a prudent purchaser and made a concerted effort to select a product that would give the maximum eye protection while playing this sport and that the resulting harm was caused by the breach of the defendant's duty to warn of the product's inherent limitations.
2. Was the trial court in error in not ruling that the plaintiff's conduct amounted to victim fault and/or contributory negligence?

LAW ON COMPARATIVE FAULT IN PRODUCT LIABILITY CASES
Contributory negligence, as a complete bar to recovery, does not apply in a strict products liability cases. The principle of comparative fault, as reflected in LSA-C.C. art. 2323,[1] may be applied in some such cases according to precepts formulated by analogy from the principle contained in LSA-C.C. art. 2323 and from other relevant social values, ethical principles and empirical data. A proper products liability case for the application of comparative fault would be a situation where the application of this theory would realistically promote careful use of the product and not lessen the incentive of the manufacture to produce a product which is safe for normal use. As a threshold requirement, a plaintiff must be found to be partially at fault in causing the resulting harm before the application of this doctrine can be considered to reduce a damage award. Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985); Landry v. State, 495 So.2d 1284 (La.1986).
Should comparative fault apply here to reduce the award?
The trial court ruled that the plaintiff was guilty of fault contributing to his injury *1001 because he turned around to directly observe the opponent return plaintiff's serve. The court reasoned a racquetball player knowledgable of the high velocities attained by a racquetball, and knowing that protective eyeware cannot be infallible, would not have placed himself in such a position. The plaintiff's award was reduced by 33 1/3%, his determined degree of fault.
The defendant argues the plaintiff's comparative fault should totally eliminate his award.
The plaintiff, in his answer, asserts that no comparative fault should be applied to reduce the award.
The record reveals the plaintiff testified his behavior in turning to observe the return of his serve was normal conduct in the play of this sport and not below any standard of due care for a player of his experience. The defendant offered no testimony whatsoever to rebut plaintiff's evidence that he was guilty of no fault in observing the return of his serve.
We determine that the trial court was clearly wrong in applying the comparative fault doctrine and reducing the damage award. The record shows no evidence the plaintiff was partially at fault in bringing about the resulting injuries or that the plaintiff's manner of play was not a normal aspect of competition in this particular sport. The defendant, who has the burden of proof, fails to satisfy the threshold requirement that the plaintiff's conduct constituted fault in some degree contributing to his injury and for this reason there is no basis for the application of the comparative fault doctrine to reduce the damage award. Landry v. State, supra.
3. Was the trial court in error in its award of the general damages?

LAW ON THE EVALUATION OF EXPERT MEDICAL TESTIMONY AND THE ASSESSMENT OF GENERAL DAMAGE AWARDS
A trial judge has the discretion to accept or reject expert medical or lay opinion and may also substitute his common sense and judgment, after weighing and evaluating the testimony, when such a substitution appears warranted upon the record as a whole. Tyler v. Richardson, 476 So.2d 899 (La.App. 2d Cir.1985), writ den., 478 So.2d 907 (La.1985). Before a general damage award can be altered on appeal, the record must show a clear abuse of the trial court's great discretion. The initial inquiry must always be directed at the particular injuries and their effects on a particular injured person. It is only after an articulated analysis of the facts discloses an abuse of discretion that the award may on appellate review, for articulated reasons, be considered either excessive or insufficient. Only after such determination of abuse has been reached is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case. Reck v. Stevens, 373 So.2d 498 (La.1979).
Are the damage awards excessive?
The trial court ruled that the abbreviated hospital stay and a fairly quick restoration of normal eyesight justified an award of $12,000.00 for pain and suffering. The court awarded $8,000.00 for the plaintiff's resulting physical disabilities which consisted only of the permanent enlarged pupil disorder with its resulting problems of glare in everyday life.
The defendant, in brief, cites cases on the quantum of damages awarded for eye injuries in support of its assertion that the trial court's award for pain and suffering is excessive. The defendant also argues the plaintiff did not prove the enlarged pupil condition was caused by the accident and that the trial court accepted the expert testimony indicating no permanent disability was anticipated.
The record reveals this particular plaintiff sustained such a traumatic compression-type injury to his left eye that treatment required four days in the hospital and ten days at home where he was forced to recline in bed at a 45° angle. The racquetball eye trauma resulted in severe pain, damage to the cornea and internal bleeding. The plaintiff related he was terrified *1002 that he would lose his sight in the injured eye and Dr. Kirchner agreed that he may have related such a possibility to his patient when the hospitalization began.
The plaintiff also related his left pupil was larger than the right pupil and that this condition was not present prior to the accident. Dr. Troup's opinion was that the pupil disorder was caused by the accident and Dr. Kirchner's opinion was that it was probably the result of the racquetball strike.
We conclude that the trial court's general damage awards do not represent an abuse of its great discretion and for that reason we do not reach an analysis of the cited cases. The mental and physical pain and suffering sustained is evident due to the severity of the injury and the real fear on the part of the plaintiff that vision in the left eye could have been lost. The plaintiff established the permanent pupil disorder was caused by the accident. The plaintiff's unrebutted testimony is that his left pupil was not larger than its counterpart prior to the injury. Both medical experts considered there to be a causal relationship between the accident and the enlarged pupil. The plaintiff has established a presumption of legal causation which the record fails to rebut. See, Heath v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3d Cir.1981); Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981). The record shows this condition is permanent and the medical expert's prognosis of no permanent disability is limited to cataracts and other serious vision impairments. We do not interpret the trial court's acceptance of these medical opinions to exclude recognition of the permanent glare problems that the plaintiff will face in his everyday life due to his enlarged pupil.
4. Was the trial court in error in its award for lost wages and curtailed productivity?

LAW ON CALCULATING SPECIAL DAMAGES FOR PAST LOST WAGES
Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. This principle is applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Hardie v. Pylant, 375 So.2d 189 (La.App. 2d Cir.1979).
In the calculation of past lost wages in the form of monthly commissions great weight is given to the amount of such past earnings in arriving at a just award. Alexander v. City of New Orleans, 464 So.2d 881 (La.App. 4th Cir.1985). Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion. The issue on appeal is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Where an award on appeal is found to be excessive, the appellate function in reviewing quantum is limited to lowering the excessive awards to the highest amount the trial court could have reasonably awarded. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).
Is the award excessive?
The defendant argues the trial court should not have awarded any damages for past lost wages as the plaintiff's testimony is self-serving and speculative as no consideration was given to the effect of changing economic conditions on his estimate. The defendant also asserts the trial court erred in awarding damages for a time period beyond which the plaintiff was incapacitated.
The trial court ruled that it did not accept the plaintiff's theory of estimating the amount of lost commissions and curtailed productivity and determined that an award of $15,000.00 was "sufficient to cover approximately *1003 a two-month period, and exceeds the actual time he was incapacitated and physically unable to work as shown by the testimony."
Initially we note the trial court was in error in awarding the plaintiff past lost wages based upon a time period stated to be in excess of the actual recuperation interval. If the trial court had been correct about the period plaintiff was unable to work, it was placing the plaintiff in a position superior to that which he would have occupied prior to the accident and this result violates the proper goal underlying such a damage assessment. Cf., French Jordan, Inc. v. Oilfield Sales & Serv., 439 So.2d 523 (La.App. 1st Cir.1983). Contrary to the trial court's finding, the record reveals the plaintiff was not medically released to resume work until August 12, 1983, a time period of 2¼ months from the date of the accident on June 2, 1983. However, it is well settled that an appellate court reviews judgments and not reasons for judgments. Caldwell v. Second Judicial Dist. Indigent, 475 So.2d 96 (La.App. 2d Cir.1985), writ den., 477 So.2d 1126 (La. 1985). Our review is limited to an analysis of the reasonableness of the quantum of the judgment as it pertains to this particular element of damage.
The record shows the plaintiff's 1982 income was $62,435.00, which equates to an average monthly commission earning of approximately $5,202.00 for a twelve month period. The 1983 income was established to be an average monthly commission of approximately $8,024.00 for the 9¾ months the plaintiff was not under medical restrictions in regard to his employment.
We conclude this assignment of error is without merit as the trial court's award is reasonably supported by the record. The plaintiff does not challenge the trial court's rejection of his theory that the amount of his past lost wages attributable to the accident would be manifest one year later in his 1984 yearly income. The trial court provided no reasoning explaining how the amount for this loss of earnings award was calculated but the record shows that a damage assessment based upon the 1982 average monthly commissions yields an estimate of approximately $11,704.00 for the 2¼ months of absence from employment. The 1983 average monthly commissions yields an estimate of approximately $18,054.00 in past lost wages for the 2¼ month period. It is evident that the trial court's award of $15,000.00 is reasonable and this loss of wage determination is not an abuse of the trial court's great discretion.

CONCLUSION
To reflect our finding that the plaintiff is guilty of no negligence which contributed to his injury, we recast the second paragraph of the judgment to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that plaintiff, D. GREGG WHITACRE, have judgment and the same is hereby rendered in his favor against defendant, HALO OPTICAL PRODUCTS, in the sum of THIRTY-SIX THOUSAND SIX HUNDRED EIGHTY AND 80/100 ($36,680.80), with legal interest from judicial demand until paid, and for all costs of these proceedings, including ONE HUNDRED SEVENTY-FIVE DOLLARS ($175.00) for each of the three (3) expert witnesses."
As AMENDED, the judgment is AFFIRMED.
NOTES
[1] LSA-C.C. art. 2323:

Art. 2323. Computation of damages
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.