686 So.2d 998 (1996)
Mel CLARK, et al.
v.
JESUIT HIGH SCHOOL OF NEW ORLEANS, et al.
No. 96-CA-1307.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
*1000 Gerald E. Meunier, Darryl M. Phillips, Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer, New Orleans, for Plaintiffs/Appellants.
Robert W. Maxwell, Gary G. Hebert, Pulaski, Gieger & Laborde, New Orleans, for Defendants/Appellees.
Before LOBRANO, JONES and MURRAY, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of defendant, Crosman Airguns Co., Inc., and against plaintiffs, Mel and Marc Clark, for injuries sustained by Marc Clark when a fellow student shot him in the right eye with a BB-pistol manufactured by Crosman.

FACTS AND PROCEDURAL HISTORY:
Several weeks prior to March 24, 1987, Rene Pagan purchased a Crosman C02-powered airgun, Model 454 BB-matic from a thirteen year old boy. Not wanting his parents to know he had the gun, Pagan, a fifteen year old sophomore at Jesuit High School, brought the gun to school and hid it in his school locker inside a gym bag.
On March 24, 1987, Pagan removed the gun from his locker. He took it onto the school grounds during recess. Pagan and a fellow student, Craig Ehrensing, sat on a bench in the school yard. Together, they fired BBs across the school yard at underclassmen. The two boys laughed as the BBs struck the other students in the legs and buttocks. Fortunately, none of the students were injured.
At the end of the school day, Pagan again retrieved the gun from his locker. He placed it inside a gym bag to take it home. As Pagan exited the school, he walked past the main steps of Jesuit High School on Carrollton Avenue. There he saw Robert Heath, another fifteen year old sophomore sitting on the steps. In an attempt to startle Heath, Pagan walked up the steps, held up the gym bag in Heath's direction and fired the gun. The noise created by the escaping CO2 gas startled Heath. When Heath asked Pagan what made the noise, Pagan responded that there was a BB gun inside the bag. Having succeeded in frightening Heath, Pagan then proceeded to the corner of Carrollton Avenue and Banks Street. There he encountered Marc Clark, another sophomore student. He held the bag up toward Clark and again pulled the trigger. Unfortunately, a BB fired from the gun pierced the gym bag and struck Clark in the right eye. As a result of this injury, Clark is legally blind in his right eye.
Subsequently, in February 1988, Mel Clark, individually and on behalf of his minor son, Marc Clark, filed suit naming Jesuit High School and Crosman Airguns Co., Inc., as defendants. By way of summary judgement, Jesuit and its insurer were dismissed.[1] All claims based on the fault of Pagan were settled prior to trial. The claims against Crosman proceeded to trial on theories of defective design and failure to warn.
Following deliberations, the jury answered the first three interrogatories on the jury form as follows:
Question No. 1:
Was there a design or warnings defect in the Crosman Airgun in which Rene Pagan shot Marc Clark?
Answer: Yes.
Question No 2:

*1001 Did the design or warnings defect exist in the airgun at the time the gun left Crosman's control?
Answer: Yes.
Question No. 3:
Did the design or warnings defect in the airgun make it unreasonably dangerous for normal use?
Answer: No.
Pursuant to these responses, the trial court entered judgment on March 14, 1996 dismissing plaintiffs' suit against Crosman.
Plaintiffs filed a Motion for Judgment Notwithstanding the Verdict or, alternatively, for new trial asserting that the jury responses were inconsistent. Their motion was denied and this appeal followed.
Plaintiffs argue that once a jury finds a product defective, it is tantamount to finding the product unreasonably dangerous for normal use. Hence, plaintiffs assert that by answering "no" to interrogatory No. 3, the jury verdict was not "reasonable" in light of the evidence presented and its response to interrogatory No.1. Plaintiff blames the inconsistency on the trial court's failure to properly instruct the jury on products liability law. This failure, argues plaintiff, constitutes reversible error requiring a de novo review by this Court.[2]
The issues presented involve both factual and legal questions for our determination. Factually we are bound by the well established principle that an appellate court may not disturb a jury's findings unless they are clearly wrong or manifestly erroneous. We have been reassured of this well entrenched principle in the recent Supreme Court case of Ferrell v. Fireman's Fund Insurance Co., 94-1252 (La.2/20/95), 650 So.2d 742. Where "a factfinder's finding is based on a decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). We must also consider the law on products liability prior to the enactment of La.R.S. 9:2800.51[3] as it relates to plaintiffs' argument of improper or incomplete jury instructions.
Plaintiffs assert that the jury's answer to interrogatory No. 3 is "internally inconsistent" with its answers to the first two interrogatories. This inconsistency, plaintiffs contend, amounts to reversible error.
Initially we observe that plaintiffs are precluded from arguing the impropriety or legal correctness of interrogatory no.3.Code of Civil Procedure article 1812 provides that with respect to special verdicts, the interrogatories must be submitted to the parties before they are given to the jury and that the parties shall have reasonable opportunity to object. Failure to object will preclude any complaints on appeal. Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993), writ denied, 94-0393 (La.4/22/94), 637 So.2d 156; St. Pierre v. General American Transportation Corp., 360 So.2d 595 (La.App. 4th Cir.1978), writ denied, 362 So.2d 1386 (La.1978).
*1002 Although plaintiffs failed to object to the interrogatory prior to submission to the jury, they argue that their complaint is really with respect to the incomplete and misleading jury charges given. They assert that had the charges been complete the response to interrogatory No. 3 could only have been in the affirmative. Specifically plaintiffs complain that the charges were deficient in the following respects:
1. Failure to provide that a product is to be considered "defective" if and only if it is unreasonably dangerous in normal use.
2. Failure to define "normal use", which included any reasonably foreseeable misuse.
3. Failure to give sufficient instructions regarding the legal adequacy or inadequacy of a product warning.
4. Failure to instruct the jury as to the legal presumption that an on the product warning would have made a difference in this case.
Plaintiffs' argument is founded in the assertion that the charges misled the jury to conclude that the gun was not unreasonably dangerous to normal use, even after having found the gun defective by answering interrogatory no. 1 in the affirmative. For the following reasons we disagree.

PRE-1988 PRODUCT LIABILITY LAW:
A manufacturer of a product may be held liable for injuries caused by the use of its product without a showing of negligence if the plaintiff proves there was a defect in the design or manufacture of the product, the product was in normal use, the defect caused an unreasonable risk of harm and the plaintiff's injury was caused by the defective product. Allen v. Traffic Transport Engineering Incorporated, 496 So.2d 1122, 1124 (La.App. 4th Cir.1986), writ denied, 501 So.2d 208 (La.1987).
In Halphen v. Johns-Manville Sates Corp., 484 So.2d 110 (La.1986), our Supreme Court recognized "failure to warn" as one theory of recovery in a products liability claim. A product may be unreasonably dangerous if the manufacturer fails to adequately warn "of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." Id. at 115 (emphasis added). Even when product misuse occurs, a manufacturer is still required to give adequate warnings if the misuse is reasonably foreseeable. Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987).
Questions of "normal use" usually arise in cases alleging a failure to warn. Whitacre v. Halo Optical Products, Inc., 501 So.2d 994, 999 (La.App. 2nd Cir.1987). "Normal use" encompasses not just use precisely in accordance with the manufacturer's instructions, it includes all reasonably foreseeable uses and misuses of a product. Whitacre, supra at 999.
The purpose of the requirement for adequate warnings is to attract and arrest the attention of a potential victim. Levi v. Southwest Louisiana Elec. Membership Cooperative, 542 So.2d 1081, 1089 (La.1989). It (the warning) cannot be required as a protection against the utterly indifferent or foolhardy. However, the protection is not restricted to only those whose senses are particularly attuned to the particular warning called for. Id. at 1089. To determine if a warning is adequate numerous factors should be considered. Included among those factors is the severity of the danger, the likelihood that the warning will catch the attention of those who foreseeably may encounter the protected risk, the intensity and form of the warning and the cost of improving the strength or mode of the warning. See, Leday v. Clairol Inc., 571 So.2d 866, 869 (La.App. 3rd Cir. 1990).
However, when the victim or a third party engages in conduct that ignores or disregards an obvious or well-known danger, this conduct is not normal use. Whitacre, supra, at 999; Savoie v. Deere & Co., 528 So.2d 724, 733 (La.App. 1st Cir.1988), writ denied, 532 So.2d 177 (La.1988). While the manufacturer must provide a reasonably safe product, he does not insure against conduct not in normal use.
In considering an argument of improper jury instruction, the court should consider the entirety of the charges and determine *1003 if they adequately provide the correct principles of law applicable to the issues as framed by the pleadings and the evidence, and whether they provide adequate guidelines for the jury. Kaplan v. Missouri Pacific R. Co., 409 So.2d 298, 304-305 (La. App. 3rd Cir.1981). An appellate court must consider the instructions as a whole to determine if they are so incorrect or deficient as to constitute reversible error. Clement v. Griffin, 91-1664 (La.App. 4th Cir. 3/3/94), 634 So.2d 412, 430 n. 6 writs denied, 94-0717, 0777, 0789, 0791, 0799, 0800 (La.5/20/94), 637 So.2d 478 and 479. We are required to undertake a two prong inquiry. First, did the charge contain an error? Second, if so, was the error so prejudicial as to prevent the jury from reaching a verdict based on the law and facts of the case? Young v. Logue, 94-0585, (La.App. 4th Cir. 5/16/95) 660 So.2d 32, 52, writ denied, 95-2575 (La.12/15/95) 664 So.2d 443, writ denied, 95-2585 (La.12/15/95) 664 So.2d 443, writ denied, 95-2597 (La.12/15/95) 664 So.2d 444.
Where small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Brown v. White, 405 So.2d 555, 558 (La.App.4th Cir.1981), aff'd. 430 So.2d 16 (La.1982). The charges must be so incorrect or inadequate as to preclude a verdict based on the law and the facts. The mere discovery of an error in the instruction does not of itself justify the reviewing court conducting the equivalent of a trial de novo, without first measuring the "gravity or degree of error and considering the instruction as a whole and the circumstances of the case." Id.
Furthermore, in making this determination, the reviewing court must exercise "great restraint" before reversing a jury verdict on the grounds of erroneous jury instructions. The reason for this standard of review is because a losing party can usually find some deficiencies in the instructions to argue for a reversal. The question to be determined is whether the jury was misled to the extent that it was prevented from dispensing justice. Brown v. White, supra at 560.
The following pertinent charges, portions of which we emphasize, were given to the jury:
To prevail on a theory of strict products liability, the plaintiff must prove that his harm resulted from a condition of the product that made the product unreasonably dangerous to normal use and that the condition existed at the time the product left the manufacturer's control.

A product is defective if it is unreasonably dangerous in construction, composition, or design, or lacked an adequate warning.
A product is unreasonably dangerous in design
(a) if a reasonable person would conclude that the danger of the product, whether foreseeable or not, outweighs the utility of the product;
(b) if alternative products were available to serve the same needs or desires with less risk of harm;
or (c) if a feasible way existed to design the same product with less harmful consequences.
A product is unreasonably dangerous to normal use because of an inadequate warning if the manufacturer fails to adequately warn about some danger related to how the product is designed, or by virtue of the manufacturer's failure to provide adequate warnings of any danger inherent in the normal use of the product, which danger is not within the knowledge, or obvious to, an ordinary user of the product.

In order to be successful in this strict products liability case against Crosman Airguns Company, Marc Clark must prove all of the essential elements of his case, that is;
(1) that the airgun manufactured by Crosman Airgun Company was defective, that is, that it was unreasonably dangerous for normal use;
(2) that the defect in the airgun existed when if [sic] left Crosman's control;
(3) that the defect in the airgun was the proximate cause of plaintiff's damage. *1004 and (4) the plaintiff suffered actual damage.
As to the requirement that plaintiff's damage be caused by the defective thing, I do not mean that the law recognizes only one cause of any injury. On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage. You should resolve this question by deciding whether plaintiff would probably not have suffered the claimed injuries in the absence of a defect in the airgun. If plaintiff probably would have suffered those damages regardless of any defect, then you must conclude that the damage was not caused by Crosman and render a verdict accordingly. If, on the other hand, plaintiff probably would not have suffered the claimed damage in the absence of a defect in the airgun, then you must conclude that the defect did play a part in plaintiff's damage.

In addition to denying that any defect in the airgun was a legal cause of any injury to the plaintiff, the defendant claims that any damages sustained by plaintiff were caused by the fault of Rene Pagan.

The basic law in Louisiana in this type of claim is found in Art. 2315 of our Civil Code:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
"Fault" is the key word in that article. It may best be explained by saying that it signifies conduct which a person or persons should not have engaged in, that is, that he or they have acted as they should not have acted, or that they have failed to do something that they should have done. It is conduct below the standard which the law applies to one's activities.

The defendant, Crosman Airguns Company, has the burden of proving the fault of Rene Pagan by a preponderance of the evidence. Crosman must prove that Rene Pagan's conduct was below the standard of care applicable to his activities and that this fault was a cause of Marc Clark's injuries.

Although the court's charges do not specifically define "normal use" nor do they reflect the necessity of adequate warnings in a "foreseeable misuse" situation, we conclude that based on the allegations and evidence in this case those omissions do not constitute reversible error.
We cannot delve into the jury's thought processes when they answered interrogatory no. 3. However, there can be little doubt but that the evidence in this case supports defendant's theory of product misuse. Regardless of the existence of a defect (whether design or failure to warn), where the user of the product engages in conduct that ignores or disregards an obvious or well known danger, and that conduct causes injury, the manufacturer will not be responsible. In this case, the jury charges specifically provide that the product must be in "normal use" for the plaintiffs to prevail on either theory of design defect or inadequate warning. Based on our review of the evidence, we are satisfied that it was reasonable for the jury to conclude that Pagan's misuse of the product, and not any defect, was the proximate cause of plaintiffs' injuries. In what appears in retrospect to be an awkward interrogatory the jury's answer to interrogatory No. 3 undoubtedly reflects their conclusion that had the gun been in normal use there would have been no accident.
Plaintiffs' defect theories were grounded on, first, the failure of the gun to have a visual load indicator which would assure the user when it was empty and, second, the manufacturer's failure to advise the user to read the owner's manual. According to plaintiff, this warning should have been on the gun. In support, plaintiffs offered expert testimony which the jury could have reasonably accepted. However even assuming that they did, the record evidence is overwhelming that the product was knowingly misused by Pagan.
Marc Clark testified that in 1987 he was a classmate and acquaintance of Rene Pagan. They were friendly and no animosity existed between them. Clark stated that on March 24, 1987, he left Jesuit High School at the close of the school day and exited onto Carrollton Avenue. As he walked up the street, *1005 he felt a tap on his shoulder. In response, he turned around. Standing behind him was Rene Pagan who said, in a joking manner, "You made me miss my bus" or some similar statement. At that moment, Clark heard a "pop" and then felt a pain in his eye. His eye began to swell to the point of bulging. He saw a reddish-yellow fluid on his hand. Clark fell to the ground in pain. When he looked up, he realized Pagan had "taken off." Out of fear and pain, Clark lay on the ground crying. Within seconds a number of students came to his aid.
Clark stated that he never saw the gun and that when he turned around, Pagan was holding some sort of bag. Pagan raised the bag to chest level and pointed it at him.
Rene Pagan testified that he brought the gun to school a couple of days prior to March 24, 1987 and hid it in his school locker. He admitted that he had fired the gun at recess earlier that day. He testified that Craig Ehrensing and Bo Baisier both witnessed him shooting the gun in the yard. However, Pagan denied shooting at other students. He claimed he only shot at the parked school buses. He accused Craig Ehrensing of shooting at the students in the yard.
After firing the gun during recess, Pagan placed the gun back in his bag and hid it again in his locker. He testified that he assumed the gun was empty because he pulled back the tab and did not see any BBs. He also stated he rolled the gun back and forth and didn't hear any BBs.
At the end of the school day, Pagan exited the school at Carrollton and Palmyra Street. The gun was inside a gym bag. As he walked outside he observed Robert Heath. He decided to startle Heath with the C02 noise. He approached Heath, pointed the gun at him from inside the bag and pulled the trigger. Heath reacted in a startled manner and inquired about the noise. Pagan then showed him the gun and walked away towards Banks Street.
Pagan then saw Marc Clark. He decided to startle Clark so he walked up to him and said, "Marc it's all your fault" referring jokingly to the fact that his after school ride had left. Pagan then lifted the bag to his chest and fired the gun which was still in the bag. He described Clark as crying out "Ow, ow, ow". Pagan stated that he did not realize at that point that Clark was hit and responded, "Yes, that's really funny" and kept walking. When he realized Clark had been shot Pagan "freaked out" and ran away. He testified that he wanted to distance himself from Clark because Clark was angry. Pagan repeatedly stated that if he believed the gun was loaded, he would not have fired it.
Pagan admitted that he had no problem with the gun jamming or with any other problem. He also stated he knew the gun held 17 BBs and counted them as he loaded the gun. He admitted it was against the rules to bring the gun to school and that he was aware that it was unsafe to point a gun at a person and pull the trigger.
Robert Heath testified that while sitting on the cement railing of the school steps on the Carrollton Ave. side of the school, Pagan walked up to him and said "Hi". Pagan then pointed a gym bag toward him within two feet of his face. He then heard a sound "like a puff of air". Heath reacted in a startled manner and asked "What is that?". Pagan then opened the bag and showed Heath the BB gun. Heath commented to Pagan to be careful because he (Pagan) couldn't be sure the gun was not loaded. Pagan responded that the gun was empty. Pagan then walked away. Within minutes, Heath saw Pagan again. Pagan was "shaken up" and stated that he thought that he had shot Marc Clark.
Craig Ehrensing and Bernard P. (Bo) Baisier both confirmed the fact that earlier in the day, at recess, Pagan had been firing the gun at other students, the school bus, trees and "anything". Ehrensing admitted that he took part in the recess "shooting spree" and admitted that he knew such activity was unsafe. Baisier witnessed this activity while eating his lunch in the basement-library.
By his own admission, Pagan was well aware of the obvious danger of pointing a gun at someone and pulling the trigger. It is certainly reasonable, given the evidence presented, for the jury to have concluded that no amount of warning and no amount of visual aid would have prevented the foolhardy actions of Pagan. As we previously noted, *1006 even though the jury interrogatories may appear inconsistent, the evidence is not. Product misuse was the proximate cause of plaintiffs' injuries, not product defect. The jury was not clearly wrong in that regard.
AFFIRMED.
NOTES
[1] Clark v. Jesuit High School, 572 So.2d 830 (La.App. 4th Cir.1990), writ denied, 576 So.2d 48 (La.1991).
[2] In the "Specification of Error" section of plaintiffs' brief, they enumerate four assignments of error:

1.) Under Daubert and its progeny in Louisiana Jurisprudence, James Jereckos should not have been permitted to testify as defendant's liability expert.
2.) The trial judge gave legally erroneous and incomplete jury charges, which directly contributed to and resulted in an inconsistent jury verdict.
3.) It was reversible error for the trial judge to enter judgment in favor of defendant pursuant to the jury's response to verdict interrogatory 3, since that response not only is inconsistent with the evidence, but also is inconsistent with the jury's responses to verdict interrogatories 1 and 2.
4.) It was reversible error for the trial judge to deny plaintiff's post-trial motion which sought to correct and address the inconsistency of the jury verdict.
The argument section of plaintiffs' brief does not track the assignments as they are enumerated. Plaintiffs incorporate these various arguments in a discussion of their claim that the jury's response to interrogatory No. 3 is inconsistent with its answer to the first two interrogatories.
[3] Gilboy v. American Tobacco Co., 582 So.2d 1263 (La.1991) held that R.S. 9:2800.51, effective September 1, 1988, is to be applied prospectively.