**Gerald Hugh SCOTT, Plaintiff-Appellant,**

**United States Fidelity and Guaranty Company, Intervenor-Appellant,**

v.

**BLACK AND DECKER, INC., Defendant-Appellee.**

No. 83–3160

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1983.

Arthur Cobb, Baton Rouge, La., for plaintiff-appellant.

Robert D. Hoover, Baton Rouge, La., for U.S.F. & G.

Joseph F. Keogh, Baton Rouge, La., for defendant-appellee.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

PER CURIAM:

Plaintiff Gerald Hugh Scott appeals from a directed verdict in favor of defendant Black & Decker, Inc. The district court ruled that Scott had failed to prove a defect in the defendant's product. We affirm.

Scott was employed by the National Valve Company as a pipefitter on the construction of the Big Cajun Power Plant at New Roads, Louisiana. In March 1981, Scott and his partner were instructed to remove a temporary gas pipeline which had been used to supply MAPP gas, a highly flammable gas used for welding, to a building site. According to Scott's testimony, the sequence of events is as follows. Scott first obtained a hand-operated pipe cutter from the tool room, but was instructed by the foreman and general foreman to use the electric band saw to cut the steel pipe because other workers could not continue construction until the pipe was cut and the saw would cut the pipe more quickly. Scott went to the tool room and was given a new Black & Decker portable band saw. He was not given the accompanying manual, which contained operating instructions and safety warnings. Scott then returned to the work-site.

At the site, Scott's partner had turned off the gas supply and had opened the pipe to the atmosphere, but had not flushed the pipe with air. The foremen had instructed Scott and his partner not to break the union of the pipeline outside of the building; the foremen were in a hurry because other workers were waiting. When Scott returned with the band saw, he climbed up to the pipe, which was near the ceiling, and began cutting the one-inch carbon-steel pipe. When he had cut about one-third of the way through the pipe, Scott smelled gas. An explosion followed immediately. Scott fell or jumped the approximately eight feet to the ground, allegedly suffering burns and back injuries. All persons involved were employed by the National Valve Company.

In the instant case, Scott has sued Black & Decker in product liability, alleging failure to warn. Black & Decker impleaded as third-party defendants, Cajun Electric Power Cooperative, Inc., Safety & Training Services, Inc., Bovay Engineers, Inc., and Burns & Roe, Inc.[1] The United States Fidelity & Guaranty Company, the workmens' compensation insurer for all of the third-party defendants, intervened. The third-party claims were severed, and the liability phase of the bifurcated trial on the original complaint proceeded. At the close of the evidence, both sides moved for a directed verdict. The district court granted Black & Decker's motion and denied the motion by Scott. Scott appeals both rulings.

 A directed verdict is proper only when reasonable minds cannot disagree on the result. On appeal, the Court must consider the evidence in a light most favorable to the nonmovant and resolve any ambiguities in favor of that party. If, considered in that manner, the evidence still supports only one possible verdict, the directed verdict is proper and will be affirmed.

 Under Louisiana law, the manufacturer of a product is liable for injury caused by a defect in the product if the injury might reasonably have been anticipated. The plaintiff must show that the product was defective, *i.e.,* "unreasonably dangerous to normal use," that the defect caused the injury, and that the plaintiff was without fault. *Weber v. Fidelity & Casualty Insurance Co.,* 259 La. 599, 250 So.2d 754, 755 (1971). The definition of defect has been enlarged to include failure to warn of a known danger. *Chappuis v. Sears, Roebuck & Co.,* 358 So.2d 926 (La. 1978). Scott's theory of liability rests entirely on Black & Decker's alleged failure to warn that its electric portable band saw was dangerous if used in a flammable atmosphere.

The alleged failure to warn is predicated on the uncontested facts that Scott was not given the owner's manual which Black & Decker packed with every saw, and that the saw itself had on it instructions to read the manual before use, but not explicit warnings about danger of explosion. Scott contends that, under *Chappuis,* Black & Decker has therefore failed in its duty to warn. *Chappuis* involved a damaged hammer which chipped in normal use and injured the plaintiff. The manufacturer and retailer knew that once a hammer had been chipped, it was likely to chip again. The warning on the hammer did not reveal this knowledge, and the information was disseminated to others only through a manufacturers' trade association. The Louisiana Supreme Court found that the defendants had failed to meet the standard of care established by the statute; "[t]he seller who knows the vice of the thing he sells and omits to declare it, ... is answerable to the buyer in damages." LSA–C.C. Art. 2315. The court stated that "[w]hen the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take *reasonable* steps to warn the user." *Chappuis,* 358 So.2d at 930 (empha-

---

1. Cajun Electric Power Cooperative was National Valve's employer. Safety & Training Services was Cajun's safety contractor. Bovay Engineers and Burns & Roe had designed the buildings of the Big Cajun Power Plant. All were alleged to have been negligent in supervising the workers and in maintaining a safe work-site.

sis added). The *Chappuis* court went on to say that if the plaintiff knew or should have known of the danger and still chose to use the product, he shared fault with the manufacturer and could not recover.

The owner's manual, which Black & Decker issues with each saw, lists twenty safety warnings on the first inside page, including instructions to ground the tool adequately, to wear proper apparel, to keep guards in place, to maintain properly, *etc.,* in addition to an explicit warning about use of the saw in explosive atmospheres. The saw itself had a label instructing the user to read the owner's manual before using the tool. The manufacturer knew that electric motors spark in normal operations, and that the sparks could ignite flammable gases; the manufacturer also passed that knowledge on to the purchaser, through the manual, and to the user, through the instructions on the saw itself. More it cannot do; to require it to place a specific warning encompassing these facts on the saw is beyond the "reasonable steps" demanded by *Chappuis.* In this case, the injury was caused by explosion, but it could just as easily have been caused by failure to observe any of the other nineteen safety precautions. To require that one explicit warning be placed on the saw would be to require all twenty. We hold that Black & Decker fulfilled its duty to warn; the saw was not defective under Louisiana law.

The plaintiff has failed to present evidence which would create disagreement between reasonable minds. The judgment of the district court is affirmed.

AFFIRMED.