459 So.2d 572 (1984)
Virginia BRUMLEY, Plaintiff-Appellant,
v.
The FIRESTONE TIRE & RUBBER COMPANY, Defendant-Appellee.
No. 83-995.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Rehearing Denied December 13, 1984.
Writ Denied February 4, 1985.
*573 Thomas & Hardy, Robert W. Thomas, Lake Charles, for plaintiff-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Fred H. Sievert and Robert S. Dampf, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, CUTRER and LABORDE, JJ.
LABORDE, Judge.
In this personal injury action based on products liability, plaintiff, Virginia Brumley, appeals a trial court judgment rejecting her claim for damages arising out of a single car collision allegedly caused by a defective tire manufactured by defendant, The Firestone Tire & Rubber Company. After reviewing the evidence, we find manifest error in the trial court's decision. Accordingly, we reverse and render judgment in favor of plaintiff.

FACTS
On November 27, 1981, plaintiff was driving her 1975 Ford LTD in a westward direction on Louisiana Highway 12 when suddenly and without warning the right front tire of her car "blew out." The blowout caused her to lose control of the car. She ran off of the road into a ditch and *574 collided with an embankment. She was severely thrown about the car, her head hitting the seat rest and her left arm striking the door. She reported to doctors that she began having pains in her hips and legs approximately two or three days following the incident.
The trauma to her left elbow caused pain in her left arm and shoulder and into the neck region. Her injuries, although disputed, consisted of an acute cervical and lower back sprain, and a bruised left elbow.
Following the accident, plaintiff's friend, C.B. "Roy" Hryhorchuk, helped her change the tire so she could drive home. He testified that the tire had apparently disintegrated and that he could see the radial cords protruding through the tire. There was no evidence of dangerous pavement conditions or road objects that may have caused the blowout. The following day plaintiff reported the incident to Gary Savoy, assistant manager of the Firestone store in Orange, Texas, complaining of the unexpected and violent blowout. She did not relate any physical injuries to him since she had not manifested any symptoms at that point.
The tire was relatively new and it is undisputed that it exhibited little wear. Mr. Savoy informed plaintiff that the Firestone steel belted "500" radial which blew out on her car was "defective" and that its inner steel belts had "separated," thereby causing the blowout. Mr. Savoy further stated in a letter to plaintiff that the blowout, caused by the "separation," could have reasonably caused her to lose control of her car. Based on these representations by Mr. Savoy, plaintiff was given a "full adjustment" in the form of a cost free replacement of the defective tire. This replacement, however, was contingent upon plaintiff signing a release form holding defendant harmless from any and all liability that may have been caused by the admittedly defective tire.
Plaintiff instituted this suit to recover for damages resulting from her personal injuries arising out of the accident. The trial court held that plaintiff failed to prove her claims by a preponderance of the evidence. She appeals from this judgment.

ISSUE
The issue presented on appeal is whether the trial court committed manifest error, in light of the evidence presented, in holding that the plaintiff failed to prove her claim by a preponderance of the evidence.
After thoroughly reviewing the testimony and evidence, and in light of the applicable legal standards, we hold that the trial court did commit manifest error in rejecting plaintiff's claim.

DEFECTIVE TIRE/PRODUCTS LIABILITY
It is well-settled in our law that a manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article or a failure adequately to warn of inherent dangers, if the injury might have reasonably been anticipated. The plaintiff has the burden of proving by a preponderance of the evidence that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971); LeBouef v. Goodyear Tire & Rubber Company, 623 F.2d 985 (5th Cir.1980).
In a negligence cause of action, it is the plaintiff's burden to prove that the manufacturer knew, or should have known, that its product created an unreasonable risk of harm, while such knowledge is presumed in a products liability case. In Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978), the Louisiana Supreme Court held that, "when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user." Id. at 930 (emphasis added). *575 This duty arises out of the manufacturer's actual or constructive knowledge of its product's shortcomings. This duty was later expanded in Cobb v. Insured Lloyds, 387 So.2d 13 (La.App. 3rd Cir.), cert denied, 394 So.2d 615 (La.1980), wherein the court indicated that "normal use" within the parlance of Louisiana Products Liability Law encompasses all intended and foreseeable uses, including reasonably foreseeable misuse, in which the consumer may engage with the product. A product is therefore "defective" if it is unreasonably dangerous in normal use, which includes a failure to warn of a known or reasonably foreseeable danger. Scott v. Black & Decker, Inc., 717 F.2d 251, 253 (5th Cir.1983). We conclude that in all cases of products liability, including those of failure to warn, a manufacturer is presumed to know of its product's potential hazards. With respect to failure to warn cases, if a product creates an unreasonable risk of harm from foreseeable use or likely misuse and the ordinary user cannot reasonably be expected to appreciate that risk, then a warning is required. Chappuis, supra. The user must be warned concerning the potential dangers of a product, whether he be the purchaser or not, and it is the user who should be furnished instructions or warnings intended to prevent misuse. Chappuis, supra; Byrd v. Hunt Tool Shipyard, 650 F.2d 44 (5th Cir.1981).
The manufacturer has a duty to know all dangerous qualities of the product, whether they be of design, manufacture, composition or failure to warn, and is responsible for making these dangers known to purchasers, or users, even though the product itself is not inherently dangerous. Jowers v. Commercial Union Ins. Co., 435 So.2d 575 (La.App. 3rd Cir. 1983); O'Brien v. Delta Gas, Inc., 426 So.2d 262 (La.App. 4th Cir.), writ denied, 433 So.2d 163 (La.1983). In light of these authorities, if a product is unreasonably dangerous, to anyone, in the course of foreseeable use because of design, composition or absence of adequate warnings, the manufacturer will be held liable whether or not it had actual or constructive knowledge of that reasonably foreseeable danger. The plaintiff need not worry about proving what the manufacturer knew or should have known.
In this instance, the trial judge held that plaintiff failed to prove that her injuries were caused by the allegedly defective tire. We disagree.
It is undisputed that defendant manufactured and sold the Firestone "500" radial tire to plaintiff. Moreover, the record supports the fact that there was a definite, known, and inherent defect in the design and manufacture of the Firestone radial "500" tire. Moreover, plaintiff was never warned when she purchased the tire that this particular model was noted for its propensity to "separate." She was not warned that all radial tires, in general, involve a risk of separation. This model tire, however, had been recalled by defendant because of this known defect. Gary Savoy, assistant manager of the Firestone store in Orange, Texas, unequivocally stated that the tire was defective because of its inherent and added propensity to "separate." He further acknowledged in a letter to plaintiff that the defect did manifest itself in plaintiff's tire and that it had "separated" and "could have caused a lost [loss] of control to the driver, causing damage." For this reason, Mr. Savoy replaced plaintiff's tire with a new one at no charge.
Plaintiff testified that she was driving at a normal rate of speed when the blowout occurred. There was no evidence to indicate poor highway conditions or road hazards where the accident occurred. The highway was safe and clear of any apparent danger. Mr. C.B. "Roy" Hryhorchuk testified that when he removed the tire from the car, he particularly noticed that the tire was new. The "rubber tits" customarily found on new tires were still noticeable as he removed the tire. He further stated, as did Mr. Savoy, that there was no evidence of any nail or object in the tire which may have caused it to blowout. Rather, it appeared to Hryhorchuk that the tire had simply disintegrated. He stated at trial that he could see through the tire and *576 that the steel cords were protruding. Mr. Savoy, defendant's assistant manager, clearly stated that this type of blowout, caused by "separation," was consistent with the known defect in the tire. He noted that he had personally experienced similar problems with the Firestone "500's" on his car and found it to be within reason that plaintiff may have run off the road as a result of the violent blowout. We agree. There are no other competing or intervening factors presented which serve to negate plaintiff's version that she lost control as a result of the blowout. Moreover, we find no reason in the record to doubt her credibility and the credibility of her witnesses.
For these reasons, we find that the tire posed an unreasonable risk of harm to plaintiff during normal use because of its defective design, composition, and because of defendant's failure to warn that the radial tire had a propensity to "separate." The blowout occurred as a direct result of the defect. This determination is clear from the facts and evidence. We further hold that the blowout caused plaintiff to lose control of her car thereby causing the accident and damages.

DAMAGES
At the outset, defendant contends that plaintiff's signature on the adjustment receipt constitutes a release of any and all personal injury claims which she may have sustained because of the defective tire. The disclaimer provides:

After thoroughly reviewing the defendant's pleadings in the record, we do not find where this defense has been properly pleaded. Transaction and/or compromise is an affirmative defense which must be specifically pleaded in accordance with LSA-C.C.P. article 1005. Having found no such compliance with this procedural mandate, we refuse to consider this defense on appeal. Moreover, even if we were to consider the alleged defense, we do not find that the disclaimer would be effective.
Following the accident, plaintiff consulted Dr. James Cloud, an orthopedic surgeon, concerning her back pain. He diagnosed her condition as an acute cervical and low back sprain. Nearly one year later he diagnosed her condition as a chronic or long lasting type of injury. Dr. Gerald Litel saw her on one occasion and diagnosed a cervical and lumbosacral strain as well as a blunt trauma to the left elbow. Defendant's examining physician, Dr. Walker, diagnosed her injuries as related to a pre-existing mild degenerative disc disease. The trial court found that plaintiff failed to show by a preponderance of the evidence that her injuries and resulting damages were caused by the defect or design in defendant's product. We disagree.
As stated above, the tire was defective and caused plaintiff to lose control and run off of the road. The evidence taken as a whole indicates that plaintiff was thrown about the car as she collided with the ditched embankment. After plaintiff related the history of the accident to Dr. Cloud, he diagnosed injuries that were consistent with the trauma described by plaintiff. We note the following testimony adduced at trial from Dr. Cloud:
"Q All right. Based on the history that she gave you and the results of *577 your examination, can you say that the accident that she described would have been the most probable producing cause of her complaints and injury?
A Yes, sir, I can. I think it was."
We hold that although Dr. Walker may have attributed her problem to a pre-existing disease, there is compelling evidence which preponderantly shows that her injuries resulted from the accident, or, at the very least, aggravated her alleged pre-existing condition. It is inescapable that plaintiff was unable to return to work for four months after the accident. She was paid $3.35 per hour, minimum wage. We attribute this interval of incapacity to the injuries she received from the accident.
The record therefore supports an award of $2,144.00 for loss of wages. Doctors' and medical bills were $723.99. Plaintiff is entitled to recover for pain and suffering resulting from the cervical and lower back sprain which we find was caused by the accident. Uncontradicted evidence indicates that plaintiff experienced pain approximately two days after the accident, again, to the extent that she could not return to work. She remained in pain for four months. It appears from the medical testimony that plaintiff's degenerative arthritis and disc disease became symptomatic because of the trauma suffered in the accident. We accept Dr. Walker's testimony that aggravation of her condition could have occurred independently. However, it is inescapable that plaintiff's symptoms were initiated by the trauma from the accident as stated by Dr. Cloud.
A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980). Under the circumstances of this case and in keeping with Perniciaro, supra, we find that the plaintiff is entitled to an award of $5,000 for her pain and suffering which the evidence will justify. It is immaterial to ascertain whether her pain arose out of an injury caused solely by the accident or whether the accident simply aggravated her pre-existing condition. This award for general damages is proper even in light of plaintiff's pre-existing degenerative condition. Romero v. Flo-Tel, Inc. 332 So.2d 596 (La.App. 3rd Cir.1976).

DECREE
It is ordered, adjudged and decreed that the judgment of the trial court be reversed and set aside and that there be judgment herein in favor of plaintiff, Virginia Brumley, and against defendant, Firestone Tire & Rubber Company for:

lost wages............................ $2,144.00
medical expenses...................... 723.99
general damages....................... 5,000.00
 _________
TOTAL ................................ $7,867.99

together with 12% interest from the date of judicial demand. All costs are assessed against defendant.
REVERSED AND RENDERED.