

## ORDER

Ronald L. Menville, William S. Bordelon, Houma, for plaintiff.

Michael J. McGinnis, McGlinchey, Stafford, Mintz, Cellini and Lang, New Orleans, for defendant.

## OPINION

MENTZ, District Judge.

### FINDINGS OF FACT

Plaintiff, Wilmot H. Williams, a forty-two year old crane operator, was formerly employed by Raymond Fabricators. During that employment he operated an American Hoist Model 9270 crawler crane. In this action he has sued American Hoist and alleged that the crane was defectively designed because there was no ladder or step system extending continuously from the crane cab to the ground. Jurisdiction, based upon diversity of citizenship, 28 U.S.C. § 1332, was uncontested.

On December 9, 1982, plaintiff was allegedly injured while dismounting the American Hoist Model 9270 crane he was operating. He had stepped down from the crane's cab to the crawler tread from which he admitted intending to jump the remaining four feet to the ground. Before plaintiff could squat on the tread prior to jumping, he said his right foot slipped, causing him to jump without first squatting. He then allegedly pulled the arch muscle in his foot and/or injured a cartilege. Plaintiff reported the accident and then continued back to work. The next day, plaintiff was terminated due to a cut back in personnel at Raymond Fabricators.

**Wilmot H. WILLIAMS**

v.

**AMERICAN HOIST & DERRICK COMPANY.**

**Civ. A. No. 83–3293.**

United States District Court, E.D. Louisiana.

March 21, 1985.

At trial, American Hoist presented testimony that it is standard industry practice for an operator to descend from the cab to the tracks, proceed to the end of the tracks, and then climb down the tread "ladder fashion" to the ground.[1] In the alternative, an operator could sit down on the end of the tread and, his legs dangling close to the ground, slide off. There have been no other reported accidents on the Model 9270 insofar as mounting and dismounting, and American Hoist has never received a request to improve the ingress/egress capabilities of this model.

Plaintiff presented testimony and exhibits which showed that the Society of Automotive Engineers, Rule J185, provides for construction machinery as follows: Section 4.7: "Steps, ladders and grab parts should be designed to invite the operator to have three limbs on the system at all times" (two hands and one foot or one hand and two feet). Sections 5 and 6 cover the design of steps and ladders.

Plaintiff also introduced OSHA standards, Subpart N, Section 1926.550–A–13 which states: "Guard-rails, hand-holds, and steps shall be provided on cranes for easy access to the car and cab, conforming to the American National Standards Institute Rule B 30.5." The latter rule provides: "On all crawler, truck and wheel mounted cranes, suitable hand holds and/or steps shall be provided to facilitate entrance to and exit from the operator's cab." Safety Code for cranes and derricks by American Society of Mechanical Engineers (USAS–B 30.5) at Section 5–I.83(b).

American Hoist argues that it substantially complied with these standards as: A hand hold is provided at the front of the cab, and a walkway and step are attached to the rotating cab of the crane. An operator can easily and safely climb up the crawler pads to the top of the tread. Then, the operator takes two steps to the step up to the cab walkway where he can grab the hand hold and step up to the walkway. Once on the walkway, the operator can then open the cab door and enter the cab.

The Court was favored by the testimony of Dr. Tarek Khalel, an expert in ergonomics or bio-technology.[2] His opinion was that the use of the treads themselves to mount or dismount invites slipping and falling. He also felt it was dangerous to jump the four feet from the top of the track to the ground. However, he was unaware of any citations by the Society of Automotive Engineers, or any violation of OSHA regulations, to any crane manufacturer for failure to furnish the sort of steps plaintiff alleged were required.

The expert, Professor Lehmen, was of the opinion that the Model 9270 does not comply with safety standards of ingress and egress, and that a design which forces the operator to choose between two unsafe methods is not acceptable. However, he did not know of any crawler cranes which met the Society of Automotive Engineers J 185 standards.

Defendant's expert, Ted Olson, vice-president of engineering for American Hoist, stated that the American Society of Mechanical Engineers B30.5 rule is standard, and that the American Hoist Model 9270 crawler crane provides a suitable means of ingress/egress for its operator. Because this crawler has a rotating superstructure with a large, protruding rear counterweight, this feature was considered in light of Rule B 30.5 before installing an operator's ladder. Mr. Olson further testified that "pinch points" were also to be avoided. (These are scissor-like angles created by the rotating cab and the two treads. A person could get caught in this space when the cab is rotated by the operator if a ladder was improperly positioned.) American Hoist had attempted to mount a step on the Model 9260, but found that it was a

---

1. The approximate space between each shoe or track is three inches, permitting a person to turn around and dismount by inserting his shoes between the treads while holding on to the tracks with both of his hands.

2. The application of biological and engineering data to problems relating to man and machine.

hazard when attached and therefore removed it for reasons of safety.

The expert Enfield was of the opinion that the Model 9270 meets all ingress/egress safety standards. In regard to ingress/egress, he pointed out that many operators squat down on the tread, dangle their legs, and then drop the short distance to the ground. He also testified that operators employ other methods of dismounting, such as jumping off the tracks or dismounting by using the tread pads as a ladder.

## CONCLUSIONS OF LAW

The subject accident took place when the Model 9270 was at rest, with its engine off, the clutch disengaged and the brakes on. Therefore, this case does not involve a hazard posed by dangerous moving equipment such as the mud pump in *Cutchall v. Great American Pump Co.*, 460 So.2d 1106 (La. App. 2nd Cir.1985), or the electric band saw in *Scott v. Black and Decker*, 717 F.2d 251 (5th Cir.1983), or even the hammer which chipped in *Chappuis v. Sears, Roebuck, Inc.*, 358 So.2d 926 (La.1978).

Plaintiff was an experienced crane operator who had worked for Raymond Fabricators for three years and eight months. Previous thereto, he was employed as a crane operator for Daniel Construction Company, but was fired for negligence. He admits there was a step from the cab catwalk to the tread, then a distance of two feet from there to the place on the tread from which you would dismount.

As stated in the Black and Decker case, supra, "the plaintiff must show that the product was defective, i.e., unreasonably dangerous to normal use, and that the defect caused the injury, and that the plaintiff was without fault." Unquestionably, the crawler crane was not only in normal use but was, in fact, turned off and secured by plaintiff. The evidence falls far short of demonstrating that the means of ingress/egress was dangerous, much less unreasonably dangerous.

Plaintiff, who produced evidence that he was with the Eighty-second Airborne Division and had qualified in jump school, claims that his 5% disability of the knee rendered him fully disabled, in view of its interaction with his pre-existing psychological condition. The psychologist, Dr. Nathan Lubin, concluded that plaintiff suffers from a profound psychological disturbance, not caused by the accident, but that the accident served as a catalyst which activated these conditions in plaintiff's mind. However, Plaintiff's treating physician had given him a release to return to work on April 5, 1983, with some restrictions. Therefore, there is a serious question as to whether Plaintiff's psychological overlay resulted from his termination on December 10, 1982, rather than his alleged injuries. In any event, plaintiff has failed to prove, by a preponderance of the evidence, that the crane was defective, and accordingly, his suit must be and is DISMISSED.