676 So.2d 701 (1996)
Francine LANDRENEAU, et al., Plaintiffs-Appellants,
v.
Vivian FRUGE, et al., Defendants-Appellees-Appellants.
No. 94-553.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1996.
Rehearing Denied September 10, 1996.
*703 Francine Landreneau, et al., pro se.
Jack Derrick Miller, Crowley, for Vivian Fruge et al.
John D. Rawls, New Orleans, for Capucine A. Landreneau.
Jimmy L. Dauzat, Opelousas, for St. Landry Parish School Board, et al.
Jack Derrick Miller, Crowley, for Vivian Fruge.
Richard Barry Nevils, Baton Rouge, for International Indemnity Corporation.
William Edward Willard, Baton Rouge, for Raymond Fontenot.
Glenn John Armentor, Timothy A. Jones, Lafayette, Leeslie J. Schiff, Opelousas, for Schiff and Jones Armentor, Attorneys.
*704 Before YELVERTON, THIBODEAUX, DECUIR, PETERS and AMY, JJ.
DECUIR, Judge.
This appeal arises out of a suit filed on October 23, 1987, by Francine Landreneau and her daughter, Capucine (Capi) Landreneau, against Vivian Fruge; the St. Landry Parish School Board; the School Board's insurer, International Indemnity Company; Raymond Fontenot and his insurer, Scottsdale Insurance Company; Martha Leger; and the Parish of St. Landry (St. Landry Parish Police Jury). The tortious actions in this case involve sexual conduct between adults and a minor. Plaintiffs' suit contained allegations that Fruge, Capi's teacher and coach, committed various acts intended to subvert the morals of Capi and entice her into homosexual activity and that Fruge was aided and abetted in her conduct by Leger, a school bus driver employed by the Acadia Parish School Board. The Acadia Parish School Board was not made a defendant. Plaintiffs further alleged that Fontenot, who was the principal of Eunice High School, and the School Board were negligent in employing Fruge and Leger. Francine and Capi Landreneau and Vivian Fruge appeal the judgment of the trial court.

ACTION OF THE TRIAL COURT
Prior to trial, the Parish of St. Landry was dismissed by judgment sustaining its exception of no cause of action. Also prior to trial, Fontenot, the School Board, and International filed an exception of prescription, which was sustained by judgment of the trial court dismissing all claims of Capi Landreneau. This judgment was subsequently affirmed on appeal and amended by this court to dismiss Capi's claims occurring prior to October 23, 1986. See Landreneau v. Fruge, 598 So.2d 658 (La.App. 3 Cir.1992). The plaintiffs neither filed for a rehearing nor sought writs to the Louisiana Supreme Court from this ruling.
After close of the evidence, the trial judge sustained an exception of no cause of action filed by Fontenot, the School Board, and International as to Francine's claim for nonpecuniary damages in light of Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La. 1990).
Leger made no appearance at the trial. A preliminary default was entered and confirmed against Leger, and judgment was rendered in favor of Capi against Leger in the sum of $10,000 in general damages. Fault was apportioned as follows: Leger 10%, Capi 10%, and others 80%.
After trial on the merits, the trial judge issued written reasons, and judgment was rendered in favor of Capi against Fruge in the sum of $40,000 in general damages. Fault was apportioned as follows: Fruge 20%, Capi 10%, and others 70%. The trial judge also awarded future medical expenses to Capi in the amount of $5,000, casting Fruge and Leger liable in solido for this item of damages.
Judgment was also rendered in favor of Francine, awarding the sum of $11,995 in past medical expenses against Fruge and Leger in solido. The trial court assessed fault for this item of damages as follows: Fruge 20%, Leger 10%, Capi 10%, Francine 30%, and others 30%.

ASSIGNMENTS OF ERROR PRESENTED ON APPEAL
Capi contends that the trial judge erred in limiting evidence and recoverable damages to events occurring on or after October 23, 1986, and appeals to this court to vacate its prior ruling on the issue of prescription. By her remaining assignments of error, Capi contends the trial judge erred in apportioning fault; in finding no liability on the part of the School Board and Fontenot; in finding no solidary liability between Fruge and Leger for general damages; and in awarding inadequate damages.
In addition to the assignments of error urged by Capi, Francine contends that the trial judge erred in sustaining an exception of no cause of action filed by Fontenot, the School Board, and International, as to Francine's claims for nonpecuniary damages. Francine also contends that she is entitled to an award for loss of consortium, and that the *705 trial court's award of past medical specials is inadequate.
Vivian Fruge claims that the trial court erred in considering her pre-October, 1986 conduct; in apportioning fault where the evidence failed to establish any causal connection between Fruge's actions and plaintiffs' damages; in finding Fruge solidarily liable with Leger for medical expenses; and in its assessment of court costs. Fruge also contends that the judgment is unclear as to the amount she owes to Capi and the awards of general damages and future medicals are unsupported by the law and the evidence.

FACTS
The record reveals that Capi had a history of extreme emotional problems, including a suicide attempt, sexual dysfunction, and alcohol and drug abuse, prior to her involvement with Fruge and Leger. Capi is the child of Francine Landreneau, who separated from Capi's father when Capi was an infant. Capi has had very limited contact with her father, and her relationship with her mother as she grew older was a poor one. Capi was born in January 1970. As Capi grew older, Francine began to treat her daughter as a friend, confiding personal matters to Capi before Capi reached the age of ten. Capi slept with her mother until the age of fourteen. She began to drink beer at the age of ten and by age thirteen drank to the point of intoxication. At the age of twelve, Capi smoked marijuana on a daily basis. She admitted to alcohol and drug abuse in the seventh and eighth grades. Capi testified that for a four-month period while at school in the seventh grade, she daily ingested downers, cocaine, and Valium. The record reflects that Capi was treated at a Ville Platte mental facility in 1984, at which time suicidal tendencies were suggested.
Unfortunately, Capi experienced sexual encounters at an extremely young age. There is some evidence that Capi was sexually abused by a female cousin from the age of seven until she was twelve years old. At the age of fourteen, Capi became involved in a homosexual relationship with a twenty-three-year-old youth group counselor. She also admitted to a sexual encounter with a classmate in the summer of 1985.
Capi's involvement with Fruge began when she entered the tenth grade at Eunice High School. At that time, Fruge became Capi's coach and physical education instructor. Fruge and Capi engaged in kissing, petting, and letter writing. The trial judge found the letters evidenced something more involved than a platonic or teacher/student relationship. The record reflects limited physical contact between Capi and Fruge (three incidents by Fruge's account and four incidents by Capi's account). Fruge testified that all acts of physical intimacy occurred off campus, after school hours, and not in connection with her duties as a teacher/coach. Capi does not dispute this account, except for one incident of kissing which Capi alleges occurred in Fruge's office. The trial judge obviously believed Fruge's version of these facts. Nevertheless, both Capi and Fruge testified that their relationship ended in January of 1986.
Subsequent to her involvement with Fruge, Capi engaged in another sexual relationship in the summer of 1986 with a female camp nurse who was over the age of thirty. In 1989, Capi entered into an abusive relationship with this older woman and lived with her for eighteen months. Capi also lived with a thirty-one-year-old man for approximately five or six months after her involvement with defendants. She testified that prior to the October 1986 incident made the subject of this litigation, she had engaged in sexual intercourse with an older man.
On October 24, 1986, Fruge hosted a party at her home, where Leger, a school bus driver, was a guest. Fruge testified that Capi was not invited to this party and was drunk when she arrived. Capi testified that alcohol and marijuana were present at the party. Capi also testified there was no physical contact between her and Fruge at this party. However, Capi and Leger engaged in sexual contacts after which Capi passed out. Capi and Leger spent the night together. The record reflects that while Fruge was not involved and did not observe the encounter between Leger and Capi, sometime during the evening she set up a bed for the two.
*706 The following morning, Francine appeared at Fruge's home looking for Capi. After relating her homosexual activities to her mother, Capi ran away from home. She was subsequently placed in Cypress Hospital, where she was admitted for alcohol and drug abuse. While at Cypress, Capi related continuing difficulty with her mother. Although Capi was apparently treated by several individuals for her psychological problems, the only evidence offered by plaintiffs was the Cypress Hospital records and the testimony of Candice Howard, a social worker who saw Capi from June of 1990 until December 1990. Ms. Howard did not see Capi again until August 1992, the month just prior to trial.

PRESCRIPTION
Suit was filed on October 23, 1987. Plaintiffs urge this court to vacate its prior judgment on the issue of prescription in light of Wimberly v. Gatch, 93-2361 (La. 4/11/94); 635 So.2d 206 and Moncrief v. Panepinto, 540 So.2d 1304 (La.App. 5 Cir.1989). These decisions are inapplicable and provide no basis for this court to revisit the issue of prescription in the case sub judice. The first appeal before this court was from a final, appealable judgment maintaining defendants' exception of prescription. That judgment became final and definitive and thus is res judicata.
We next address Fruge's argument on the issue of prescription. Fruge contends that the trial judge erred in considering her actions prior to October 23, 1986, and in assigning fault to Fruge where there was no evidence of sexual encounters between Fruge and Capi subsequent to October 23, 1986. Stated differently, Fruge argues that other than the alleged sexual encounters, which had all prescribed, there were no findings by the trial judge of any acts of fault on the part of Fruge which had not prescribed and that the trial judge's reasons for judgment failed to provide a basis for liability on the part of Fruge. We disagree.
The trial judge, in written reasons for judgment, discussed the party held at Fruge's home on October 24, 1986. Fruge permitted Capi and four other teenagers under the age of eighteen to be at this party where adults, alcohol, and marijuana were present. Furthermore, Fruge allowed Capi to spend the night with Leger in her home and actually set up a bed for the two of them. Fruge's culpability lies in the fact that she facilitated the tortious conduct of Leger on October 24, 1986, and, therefore, plaintiffs' claims as to Fruge's conduct on that date have not prescribed. Thus, Fruge's assignment of error on this issue lacks merit.

NO CAUSE OF ACTION
We next address Francine's contention that the trial judge erred in sustaining defendants' exception of no cause of action. To recover for mental anguish or distress caused by injury to her daughter, Francine must first prove that she viewed the encounter between Capi and Leger or that she came upon the scene soon thereafter before substantial change occurred. Furthermore, the mental anguish or emotional distress must be severe, debilitating and foreseeable. La.Civ. Code art. 2315.6; Lejeune, 556 So.2d 559. Francine did not witness any encounter between Capi and defendants and did not come upon the scene soon thereafter. Having failed to meet her threshold requirement, it is not necessary to reach the issue as to whether Francine suffered severe, debilitating and foreseeable injury. Nevertheless, there is nothing in the record to support a finding of severe emotional distress. Therefore, we find no error in the trial judge's denial of damages under La.Civ.Code art. 2315.6.

SCHOOL BOARD AND PRINCIPAL
We turn now to the question of liability of Fontenot and the School Board for the acts of the School Board's employee, Fruge, on October 24, 1986. The trial judge found no fault on the part of Fontenot and the School Board stating that he could not find from the evidence that these defendants did something they should not have done or failed to do something they should have done that would have prevented the development of the relationship between Fruge and Capi. This finding may not be set aside by this court in the absence of manifest error, and where there is conflict in the testimony, reasonable *707 evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Applying this standard, we affirm the trial judge's finding of no fault on the part of Fontenot and the School Board.
The record reflects that Fontenot, the principal of Eunice High School at the time of the allegations, hired Fruge on the recommendation of Johnny Bourque, the school's football coach, and after obtaining a favorable report from Fruge's previous employer. Mr. Bourque made his recommendation upon observation and interview of Fruge and after speaking with Fruge's former immediate supervisor. Neither of these individuals received any information about Fruge which would have caused them to know or to have reason to know of her homosexual tendencies or the fact that she might engage in sexual activities with a student. Furthermore, Fruge had been employed at Eunice High School for approximately five years prior to the time she became involved with Capi. During that five years, neither Fontenot nor Bourque received any information or observed any behavior which would have led them to question Fruge's character. The testimony of Fontenot and Bourque was corroborated by Vernon Mott, a teacher at the school. Furthermore, Capi never revealed her relationship with Fruge to school officials.
The fault of the School Board may also arise from the doctrine of respondeat superior for the acts of its employees. La. Civ.Code art. 2320 provides that an employer is answerable for the damage occasioned by its servant in the exercise of the functions in which the servant is employed. Applying that article, an employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. Orgeron v. McDonald, 93-1353 (La. 7/5/94); 639 So.2d 224, citing Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985). Generally speaking, an employee's conduct is within the course and scope of employment if the conduct is of the type that he is employed to perform, occurs substantially within the authorized limits of time and space, and is motivated at least in part by a purpose to serve the employer. Orgeron, 639 So.2d 224. Fruge's conduct at issue in determining employer fault is that which occurred at her home on the night of October 24, 1986. This conduct occurred away from her employment, occurred after employment hours, and the conduct was not the kind which she was employed to perform. We conclude that the tortious conduct by Fruge on October 24, 1986, was not within the course and scope of her employment with the School Board as defined by the court in Orgeron. Thus, we find no error in the trial judge's finding of no fault on the part of Fontenot and the School Board.

APPORTIONMENT OF FAULT

Capi's Fault
The trial judge found that Capi consented to the sexual activities with defendants and assessed Capi with 10% fault. Because we find manifest error in the trial judge's finding, we reverse the assignment of fault to Capi. Capi was a minor at the time of her encounter with Leger at Fruge's home on October 24, 1986. The defendants' expert, Dr. Louis Cenac, Jr., a psychiatrist, testified it was his opinion in cases of child molestation it is not possible for a child to give consent. This testimony was corroborated by Candice Howard. Consent was absent under the circumstances of this case; therefore, the allocation of fault to the child is reversed.

Fault of "Others"
We conclude that the trial judge committed error in assessing fault to "others" and reverse this finding for the following reasons. We address first the contention by plaintiffs that the trial judge erred in apportioning fault to "others," which category included fault attributable to Francine. In reasons for judgment, the trial judge stated:
The Court is convinced from the evidence offered that Capi's relationship with her mother; her heterosexual and homosexual encounters, aside from Fruge and Leger; her bout with alcohol and drugs; *708 the absence of a father figure in her home during her formative years; her encounters with Fruge prior to October 23, 1985 [sic] and those thereafter; and her sexual encounters with older women after her relationship with Fruge was terminated all contributed to the psychological profile that led to her being committed for treatment. Accordingly, the Court assesses fault and/or causation as follows:

1. Fruge 20%
(Only for her conduct after Oct. 23, 1985 [sic])
2. Leger 10%
3. Capi 10%
4. Others 60% (Emphasis ours.)

Furthermore, in a per curiam opinion rendered after written reasons, the trial judge, in assessing fault for claims against Leger, stated:
In order to properly assess fault in this case, the Court finds the following, taken from the list on page 10 of the original reasons, to be fault contributing factors:
1. Francine Landreneau

2. Other heterosexual and homosexual encounters while Capi was still a minor.
3. All of Capi's encounters with Fruge while Capi was still a minor. (Emphasis ours.)
From our reading of the above, it appears the trial judge imputed the fault of the mother to the child by including the mother's fault in the 60% assessed to "others." In McFarland v. Industrial Helicopters, Inc., 502 So.2d 593 (La.App. 3 Cir.1987), this court refused to reduce the minor's award by the amount of fault assessed to the minor's mother. See also Matthews v. State Farm Fire & Casualty Ins. Co., 550 So.2d 936 (La.App. 3 Cir.1989).
Secondly, we conclude that since all claims against Fruge prior to October 23, 1986 have prescribed, the only tortious conduct in question is that which occurred at Fruge's home on October 24, 1986, at which time Leger and Capi engaged in lesbian activities. As previously stated, Fruge's culpability lies in the fact that she facilitated the encounter between Leger and Capi. Therefore, any assessment of fault to "others" as to this encounter is erroneous. Thus, the trial court's assessment of fault to "others" in connection with the award of damages to Capi is reversed, and fault is hereby reallocated 50% to Fruge and 50% to Leger.

Fruge's Fault
Fruge contends that the trial judge erred in considering Fruge's pre-October 23, 1986 conduct in allocating fault. It is clear from the trial judge's reasons that he considered Fruge's conduct only after October 23, 1986, in assessing fault, although the reasons state "1985," clearly an inadvertent error. Although in reasons for judgment the trial judge discussed facts involving allegations against Fruge that had prescribed, he specifically stated: "Only for her conduct after Oct. 23, 1985." Therefore, Fruge's argument that the trial judge considered pre-October 23, 1986 conduct in assessing fault is without merit.

SOLIDARY LIABILITY
Plaintiffs contend the trial judge erred in finding Fruge and Leger were not solidarily liable for general damages. Fruge argues that although the trial judge was correct in finding Fruge and Leger were not solidary obligors with regard to the general damage award, it was error to find Fruge and Leger solidarily liable for medical expenses.
The trial judge concluded that Fruge and Leger were not joint tortfeasors and their faults were not concurring, apparently basing this finding on the fact that Leger's tortious conduct constituted one act, while Fruge's conduct was continuing. In light of the fact that all claims prior to October 23, 1986 have prescribed, only one act by Fruge is relevant, i.e., Fruge's involvement in the October 24, 1986 incident at her home. The trial judge correctly noted that at the time the wrongful conduct occurred, La.Civ.Code art. 2324 provided in pertinent part:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act. (Emphasis added.)
Because Fruge allowed the minor, Capi, to remain at Fruge's home, where adults, alcohol *709 and marijuana were present, and because Fruge allowed Capi to spend the night with Leger in a bed set up by Fruge in her home, Fruge facilitated Leger's wrongful conduct with Capi. Therefore, pursuant to La.Civ. Code art. 2324, Fruge and Leger are liable in solido for both general damages and medical expenses.

GENERAL DAMAGES
Capi complains that the award of $50,000 in general damages is inadequate. On the other hand, Fruge contends the general damage award is unsupported by the law and the evidence. Based upon our review of the jurisprudence, we find that the trial judge was well within the much discretion afforded the trier of fact based upon the facts of this case. See Guidry v. Rapides Parish Sch. Bd., 560 So.2d 125 (La.App. 3 Cir.1990). Furthermore, we find Fruge's contention that the general damage award is unsupported by the record to be without merit.

MEDICAL EXPENSES
Francine contends that the trial judge's award of medical expenses is inadequate. The trial judge awarded the sum of $11,995 for medical expenses incurred by Francine on behalf of Capi, finding that the only expenses submitted by Francine which were established by a preponderance of the evidence were those of Cypress Hospital in the amount of $10,000 and Magnolia House in the amount of $1,995. We find no error in the trial court's finding.
Furthermore, we note that the trial judge assessed 30% fault to Francine for her daughter's problems and accordingly reduced her award by that amount. The record reflects that while at Cypress Hospital, Capi described her relationship with her mother as a poor one and related that her mother called her "stupid," "bitch," and other degrading names. Furthermore, plaintiffs' own expert opined at trial that Capi's relationship with her mother was an abusive one. Although Francine's fault is not imputable to Capi as to the general damages awarded to Capi, the same result is not reached in regard to special damages recoverable by the mother. We find no manifest error in the trial court's assessment of fault to Francine, and the trial judge was correct in reducing her award by 30%. See McFarland, 502 So.2d 593.
Fruge contends the award of future medical expenses is unsupported by the law and the evidence. We disagree. In awarding Capi the sum of $5,000 in future medical expenses, the trial judge concluded from the testimony of plaintiffs' expert, Candice Howard, that further psychological treatment would be necessary and calculated the amount of future medicals based upon costs presented by Ms. Howard. Thus, we affirm the award of future medicals to Capi in the amount of $5,000.

LOSS OF CONSORTIUM
Francine contends that she is entitled to damages for loss of her daughter's society due to the wrongful conduct of Fruge and Leger. Considering the nature of Capi's relationship with her mother prior to Capi's encounter with defendants and Francine's failure to prove a loss of consortium, we cannot say that the trial judge erred in failing to award damages for loss of consortium.

COURT COSTS
Finally, defendant Fruge complains of the trial judge's assessment of court costs of 80% to Fruge and 20% to Leger. The trial court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La.Code Civ.P. art. 1920. The court has broad discretion in apportioning costs as it deems equitable. We find no abuse of discretion in the assessment of court costs.

CONCLUSION
The trial court's assessment of fault to Capi and "others" is hereby reversed and fault is reallocated 50% to Fruge and 50% to Leger. The trial court's finding that Fruge and Leger are not solidarily liable for general damages is likewise reversed. Fruge and Leger are solidarily liable for both general and special damages awarded to Capi Landreneau. The judgment of the trial court is *710 affirmed in all other respects. Costs of appeal are assessed to Vivian Fruge.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
AMY, J., concurs.
THIBODEAUX, J., concurs in part and dissents in part with reasons.
THIBODEAUX, Judge, concurring in part and dissenting in part.
I agree with the majority's treatment of the exception of no cause of action with respect to Lejeune damages, the lack of liability on the principal, Raymond Fontenot, elimination of fault against Capi, the elimination of fault to "others" but for different reasons, the solidary liability of Fruge and Leger, and the award of future medical expenses to Francine and Capi.
I disagree on all other issues.

PRESCRIPTION
The majority refuses to vacate this court's previous judgment in Landreneau 1, 598 So.2d 658 (La.App. 3 Cir.1992). Landreneau 1 determined that:
No evidence, ... other than the letters, was introduced in support of Capi's claim of psychological trauma. In sum, there is... no credible evidence in the record to support plaintiff's argument that she suffered mental incapacity, as a result of these letters, sufficient to invoke the doctrine of contra non valentum [sic].... While she may have been hesitant to discuss sexually deviant conduct with her mother, we cannot say that such hesitancy and the avoidance of the subject gave rise to the requisite level of incapacity to invoke the rule of contra non valentum [sic].
Id. at 662
Wimberly v. Gatch, 93-2361 (La. 4/11/94); 635 So.2d 206, rendered subsequent to this court's ruling on prescription in Landreneau 1, renders the bases for our decision in Landreneau 1 untenable. Factually and jurisprudentially, Wimberly is indistinguishable from the present case. The majority erroneously applies res judicata to hold that all pre-October 23, 1986 Acts are prescribed. In my view, the "law of the case" principles apply and we should vacate our previous ruling in Landreneau 1.
The applicability and purpose of the "law of the case" principle is enunciated in Petition of Sewerage and Water Board of New Orleans, 278 So.2d 81, 83 (La.1973), as follows:
The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effect of appellate rulings of the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.
* * * * * *
Nevertheless, the law of the case principle is applied merely as a discretionary guide: Argument is barred where there is merely a doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice. (Emphasis added) (Citations omitted).
See also State, DOTD v. Dietrich, 625 So.2d 634 (La.App. 3 Cir.1993), writ denied, 631 So.2d 448 (1994).
The previous holding in Landreneau 1 is palpably erroneous. Wimberly v. Gatch held that in a suit for damages arising out of the sexual abuse of a minor child by another, prescription does not commence to run until the proper party plaintiffs have knowledge of the facts surrounding the abuse. The supreme court applied the equitable principles of contra non valentem. Wimberly v. Gatch reversed a court of appeal judgment which had refused to apply contra non valentem. The appellate court's raison d'être was that the young child was neither threatened nor harmed and his silence was not coerced. However, the normal behavioral reactions of a victim of child sexual abuse are detailed in Wimberly and need only be summarized here. They include silence, secrecy, and failure or refusal to disclose. Indeed, one wonders why a fifteen or sixteen year old who engages in consensual sexual contact with others would invoke the contra non valentem principle. The answer is simple: The actions *711 of a victim of sexual abuse, according to the authoritative studies cited in Wimberly, contradict traditional views. Capi, therefore, reacted to her relationship with Fruge in a normal manner, i.e., she was very reluctant to admit to the victimization process.
Due to the normal behavioral reactions of a sexually abused child to the sexual abuse, secrecy and delayed disclosure, Capi's mother was effectively prevented from pursuing Capi's claim for damages against Fruge. Public policy enjoins legal fictions like imputation of knowledge from operating to assist the child molester in escaping liability for her intentional wrongs. Francine's lack of knowledge and her failure to discover the abuse were both direct results of Fruge's intentionally tortious conduct. A combination of the third and fourth categories of contra non valentem,[1] suspended prescription on Capi's claim until Capi disclosed the abusive acts. Francine became aware of Capi's molestation by Fruge by October 24, 1986, and following the rationale of Wimberly, prescription began to run at that time.
Since the claims by Capi against Fruge relative to Fruge's action prior to October 23, 1986 have not prescribed, the basis for liability on the part of Fruge has been established. Because Fruge's pre-October 1986 acts were admitted at trial but not properly considered by the trial judge, the trial court judgment is in error.

FAULT OF THE SCHOOL BOARD
The fault of the School Board may arise from its own acts or failures to act or, under the doctrine of respondeat superior, from the acts of its employees. See also, La.Civ.Code art. 2320. Under the doctrine of respondeat superior, the actions of Fruge and Fontenot, the principal, should be the focus. Fontenot v. State through Dept. of Education, 635 So.2d 627 (La.App. 3d Cir.1994). The duties of the School Board with respect to the safety of its students were well articulated in Prier v. Horace Mann Insurance Co., 351 So.2d 265, 268 (La.App. 3 Cir.), writ denied, 352 So.2d 1042, 1045 (1977):
School teachers charged with the duty of superintending children in the school must exercise reasonable supervision over them, commensurate with the age of the children and the attendant circumstances. A greater degree of care must be exercised if the student is required to ... engage in an activity where it is reasonably foreseeable that an ... injury may occur. The teacher is not liable in damages unless it is shown that he or she by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so. It is also essential that there be proof of negligence in failing to provide the required supervision and proof of a causal connection between the lack of supervision and the accident... (Citations omitted).
Fruge was Capi's teacher and coach. Fontenot was the principal of Eunice High School. The record is unclear as to the exact location on the school grounds where Fruge first kissed Capi; however, it is undisputed that a kiss did occur on the school grounds. Fruge admitted to two additional tongue-kissing episodes, with the last kiss involving her and Capi laying on Fruge's bed and hugging. Thus, Fruge committed intentional inappropriate physical acts upon Capi. This finding is supported by the evidence.
Capi was fondled and tongue-kissed by a teacher and coach hired by the School Board. Fruge's first act of kissing Capi on school grounds which escalated to further sexual physical contact with Capi would not have occurred but for their teacher/coach and student relationship. Another kiss between Capi and Fruge took place after a basketball game and on school grounds. Technically, Fruge was off duty when the kiss took place. However, because of her position as a coach and Capi's position as a basketball player when Fruge went to "counsel" Capi, she was promoting the high school's interest. See, *712 Dismuke v. Quaynor, 25,482 (La.App. 2 Cir. 4/5/94); 637 So.2d 555. Furthermore, Fruge frequently pulled Capi out of class to talk to her. Capi explained that Fruge often wanted to see her alone to talk about their relationship. Given this relationship, the doctrine of respondeat superior imposes liability on the School Board.

FAULT OF OTHERS
I agree with the majority that the fault of "others" should be eliminated. However, I do so on the basis of Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La. 6/30/95); 657 So.2d 975. Under Cavalier, it is neither necessary nor appropriate to quantify the fault of "others" since there were no settling tortfeasors and Francine's fault is not imputable to Capi.

APPORTIONMENT OF FAULT
The trial judge made an error of law in finding Capi 10% at fault and an additional error of law by assessing percentages of fault to "others." Consequently, Clement v. Frey, 95-1119, 95-1163 (La. 1/16/96); 666 So.2d 607, is inapplicable and this court could properly conduct a de novo review of fault. Vivian Fruge and the St. Landry Parish School Board, under the doctrine of respondeat superior, should be assessed with 90% of the fault and Martha Leger should be assessed with 10% of the fault.

DAMAGES

A. Loss of Consortium
The majority points out, and as Capi's mental health records from Ville Platte reveal, that Capi and her mother did not have the best mother and daughter relationship. However, Fruge's letters to Capi which were used by Fruge to coerce Capi into keeping their relationship and activities secret, did nothing to help an already bad situation between Capi and her mother. A defendant takes her victim as she finds her and is responsible for all natural and probable consequences of her tortious conduct. Brumley v. Firestone Tire and Rubber Company, 459 So.2d 572 (La.App. 3 Cir.1984), writ denied, 462 So.2d 1267 (1985). Capi was admitted into a mental health facility and then released to a half-way house subsequent to her relationship with Fruge. During Capi's treatment, she was not allowed to talk to her mother about the therapy. Capi felt betrayed by her mother after her mother approached the authorities with the information about Fruge's and Capi's relationship. At the time of trial, Capi was no longer living with Francine and hardly spoke to her.
Francine feels that the bonds of mother and daughter have been forever broken and is insecure about her relationship with Capi.
Under these circumstances, I would award $25,000.00 to Francine for her loss of consortium claim.

GENERAL DAMAGES
The majority correctly observes that many of Capi's problems preceded her relationship with Fruge and Leger. However, full recovery is permissible even though the treatment relieves a pre-existing condition. Brumley, 459 So.2d at 577. Capi's relationship with Fruge was not the sole cause of Capi's treatment, but that relationship was the impetus behind Capi's extensive, residential mental health treatment. Furthermore, Capi testified that 90% of her thoughts during the school year, even after January, 1986, were about her relationship with Fruge. Therefore, whatever problems Capi had before meeting Fruge were aggravated by her intimate, physical relationship with Fruge who was Capi's teacher, basketball coach, authority figure, and trusted adult.
Fruge and Leger were adults and Capi was a troubled teen, fifteen years old. The acts committed by Fruge and Leger against Capi were intentional. During the week after the party at Fruge's home, Capi became increasingly agitated and ran away from home. Capi felt that she could not return to her old high school and greatly feared the loss of Fruge's affection. Under the circumstances of this case and using the Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), methodology, Capi should be awarded $125,000.00 in general damages.
*713 For the foregoing reasons, I respectfully dissent.
NOTES
[1] Those categories state:

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
(4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Wimberly, 635 So.2d at 211.